In re ALLIED CHEMICAL
CORPORATION, et
al., Relator.

No. 04–1023.

Supreme Court of Texas.

Argued Nov. 16, 2005.

Decided June 15, 2007.

---

Robert G. Newman, and Rosemarie Kanusky, Fulbright & Jaworski L.L.P., San Antonio, R. Bruce Hurley, David G. Oliveira, Roerig Oliveira & Fisher, Brownsville, J.A. (Tony) Canales, Canales & Simonson, P.C., Corpus, Christi, Richard L. Josephson, Michael B. Bennett, Baker Botts, L.L.P., Robert Scott, Susie Denise Rosenthal, and Delia A. Spencer, Abrams Scott & Bickley, L.L.P., Houston, Michael B. Hughes, David E. Cowen, McLeod Alexander Powel & Apffel, P.C., Galveston, Michelle E. Murphy, Ricardo G. Cedillo, Davis, Cedillo & Mendoza, Inc., Robert L. Soza, Julia W. Mann, Mark Anthony Fassold, Jackson Walker L.L.P., San Antonio, Robert B. Gilbreath, Hawkins, Parnell & Thackston, LLP, Dallas, David Neal Calvillo, Martin Drought & Torres, Inc.,

McAllen, Brandy M. Wingate, Attorney At Law, Mission, Marc Edward Rietvelt, Jenkens & Gilchrist, San Antonio, Walter J. Passmore, Passmore Law Firm, McAllen, Michael J. Mazzone, Ann Al-Bahish, Haynes and Boone, LLP, Edward M. Carstarphen, Ellis, Carstarphen, Dougherty & Goldenthal, PC, Peter Thompson, Thompson & Reilley, P.C., Reagan W. Simpson, King & Spalding LLP, Houston, TX, Robert M. Howard, Christine G. Rolph, Latham & Watkins LLP, San Diego, CA, Troy Ford and David J. Beck, Beck Redden & Secrest, L.L.P., Houston, O.C. Hamilton Jr., Atlas & Hall, LLP, McAllen, Norton A. Colvin Jr., Rodriguez Colvin, Chaney & Saenz, L.L.P., Brownsville, Jack W. Dillard, Bryan, Sandra Thourot Krider, Edwards Burns & Krider LLP, Houston, Michael R. Klatt, Clark Thomas & Winters, Austin, Edmundo O. Ramirez, Ellis Koeneke & Ramirez, L.L.P., McAllen, Richard W. Espey, Derick James Rodgers, Davis Cedillo & Mendoza, Inc., San Antonio, David Blackshear Mantor, Ellis Carstarphen Dougherty & Goldenthal, P.C., Houston, Jose E. Garcia, Garcia & Villarreal, LLP, McAllen, Brady Sherrod Edwards, Edwards Burns & Krider LLP, Houston, for Relator.

Ramon Garcia, Law Offices of Ramon Garcia, P.C., Edinburg, Dennis C. Reich, Reich & Binstock, L.L.P., Houston, Ramon Rosales Jr., Law Office of Ramon Rosales, Jr., Mission, Robert Alan York, Godwin Pappas Ronquillo LLP, David W. Holman, Holman Law Firm, P.C., Linda L. Laurent, Thomas & Wan, L.L.P., Houston, and Mauro L. Reyna III, Penitas, Michelle Wymae Wan, Thomas & Wan, LLP, Houston, for Real Party In Interest.

Dwight E. Jefferson, Attorney At Law, P.L.L.C., Houston, George P. Powell, Hinojosa & Powell, P.C., McAllen, TX, for Intervenor.

Justice BRISTER delivered the opinion of the Court, in which Justice HECHT, Justice MEDINA, Justice GREEN, and Justice WILLETT joined.

Trial judges have broad discretion in scheduling discovery and trial, but that discretion has never been unlimited. As we stated in 1847, trial courts may set trials as they wish, but not so indiscriminately that the parties are "deprived of any just defense, or that their rights would in any manner be jeopardized." [1]

Since 1847, new kinds of litigation have emerged that require new applications of this rule. Eleven years ago in *Able Supply Co. v. Moye,* we held that in mass tort cases involving hundreds of parties and complicated causation questions, a trial judge could not postpone responses to basic discovery until shortly before trial.[2] Finding that is precisely what has occurred here, we again grant mandamus relief.

## I. The Proceedings and Mootness

Roughly 1,900 plaintiffs sued 30 defendants in Hidalgo County, alleging exposure to chemical fumes and leaks from several sites where pesticides were mixed or stored before the sites were placed in receivership in 1967 and remediated in 1980. The plaintiffs identified no particular incidents or products, instead alleging exposure to a "toxic soup" of emissions in the air for many decades. As we recently noted, no such claim "has ever been tried or appealed in Texas," and thus "the tort is immature." [3]

Five years after filing, the trial court set the first trial for little more than six months away. Despite our admonitions that trial courts should "proceed with extreme caution" in setting consolidated trials in immature mass torts,[4] the trial court consolidated five claims for the initial trial. The five plaintiffs had little in common—ranging in age from 29 to 74, residing in various directions from two different sites, alleging exposure over different parts of seven decades, and suffering injuries from asthma and arthritis to miscarriages and heart disease, and in two cases damaged property. Shortly after the trial court's order, we issued *In re Van Waters & Rogers, Inc.,* reversing the same kind of order in the same kind of case in the same county.[5] The defendants brought the opinion to the trial judge's attention, but he changed nothing. Neither did the Thirteenth Court of Appeals, where the defendants sought mandamus relief to no avail.[6]

But when we granted a stay and requested full briefing, the plaintiffs retreated, asking the trial court to (1) sever out the property claims, (2) drop one plaintiff, and eventually (3) withdraw its consolidation order and proceed to trial on just one plaintiff's claims. The trial court granted

---

1. *Borden v. Houston,* 2 Tex. 594, 603 (1847) ("In refusing this application [for continuance] we are unable to perceive that any rule of law was violated, or that there was any abuse of judicial discretion calling for a reversal of the judgment. Had it appeared that by being required to proceed to trial at that term, the defendants, without any fault on their part, would be deprived of any just defense, or that their rights would in any manner be jeopardized, a different case would have been presented.").

2. 898 S.W.2d 766, 772 (Tex.1995).

3. *In re Van Waters & Rogers, Inc.,* 145 S.W.3d 203, 208 (Tex.2004).

4. *Id.* at 208 (citation omitted); *In re Ethyl Corp.,* 975 S.W.2d 606, 614 (Tex.1998) (allowing consolidated trial as asbestos claims were mature tort).

5. 145 S.W.3d at 211.

6. 2004 WL 2554872 (Tex.App.-Corpus Christi 2004).

these requests, ordering that "the personal injury claims of Plaintiff Guadalupe Garza proceed to trial."

■ We disagree with the dissent that this last order renders these proceedings moot for several reasons. First, in their petition for mandamus (as well as in the trial court), the defendants complained of two things—that the trial court erred in setting a consolidated trial "in contravention of *In re Van Waters & Rogers, Inc.* and in the absence of an adequate response to the *Able Supply* Interrogatory." The trial court has withdrawn consolidation (the *Van Waters* problem), but one plaintiff's claims have still been ordered to trial despite inadequate responses (the *Able Supply* problem). As the relief requested by the defendants is a trial of one plaintiff's claims held a reasonable time after the *Able Supply* interrogatory is adequately answered,[7] a controversy still exists whether they are entitled to that.[8]

Second, the defendants argue that while the plaintiffs have moved for deconsolidation in the face of this mandamus proceeding, even though they were unwilling to do so in the face of *Van Waters*, they have refused to give any assurance that they will not seek future consolidated trials inconsistent with *Van Waters*. The situation that gives rise to this proceeding is thus fully capable of repetition, and if review can be evaded by the modification of orders pending mandamus proceedings, the defendants would be put to the repeated expense of seeking review only to have it denied by last-minute changes in the trial court's orders. An appellate court's jurisdiction cannot be manipulated in this way.

Third, our order staying the docket control order here preserved the parties' positions as they were at the time, not as they hustled to change them thereafter. The plaintiffs apparently filed supplemental answers after the trial setting—not the order but the trial date itself. The question before us is not changed by knowing what experts the plaintiffs would have finally disclosed at trial; that they would not do so any earlier is precisely the defendants' complaint. And while the defendants certainly did challenge the adequacy of those answers at oral argument (the first time the plaintiffs asserted them as an excuse), the question before us is not their adequacy but their timeliness.

Finally, while we encourage parties to work out pretrial disputes so appellate courts need never consider them, we cannot encourage parties to manipulate pretrial discovery to evade appellate review. Pretrial cannot be conducted one way when appellate courts are looking and another way when they are not. As hundreds of similar claims remain in this case and the plaintiffs stoutly maintain they had no duty to supplement their answers at all, the question before us is not moot as it is capable of repetition in a manner that evades review.[9]

## II. The Trial Setting and *Able Supply*

In *Able Supply,* more than 3,000 plaintiffs sued nearly 300 defendants for toxic

7. "Accordingly, Relators, defendants below, request that ... the trial court be ordered to proceed to trial with a single plaintiff, after discovery is complete, and after the designated plaintiff—consistent with *Able Supply*—connects his or her alleged injury to exposure to the defendants' products and services via testimony of a qualified medical expert."

8. *See In re Kellogg Brown & Root, Inc.,* 166 S.W.3d 732, 737 (Tex.2005) ("A case becomes moot if a controversy ceases to exist between the parties at any stage of the legal proceedings ...").

9. *See Blum v. Lanier,* 997 S.W.2d 259, 264 (Tex.1999).

exposure. After 8 years, the plaintiffs still had not named anyone who could connect their injuries to any defendant's product. Instead, each plaintiff responded in discovery that this basic and crucial element of their claims "has not been determined at this time, but will be supplemented at a later date." As here, the plaintiffs asserted that the trial court had "broad discretion to manage its own docket, and . . . has acted well within that discretion in determining that no answers are required at the present time."[10] We disagreed, holding that the trial court's apparent indifference as to when such information might be disclosed was a clear abuse of discretion with no adequate remedy by appeal.[11]

■ The issue in this case is the same. The defendants made the same request as in *Able Supply*, asking for medical experts who could connect the plaintiffs' diseases to the defendants' products.[12] Although five years had passed since filing, the plaintiffs all responded either "not applicable" or that "none of their treating physicians" could do so. But the interrogatory did not ask about treating physicians, but *any* expert; as we noted in *Merrell Dow Pharmaceuticals, Inc. v. Havner*, treating physicians usually cannot make this kind of connection.[13] By changing the defendants' question, the plaintiffs were able to respond with almost nothing.

■■ The plaintiffs point out that their supplemental answers included a long list of chemicals to which they were "potentially exposed," and medical articles and expert reports suggesting some of those chemicals were "capable of causing" or "significantly contributed" to some of their diseases. But as this Court explained in *Havner*, "[t]o raise a fact issue on causation . . . a claimant must do more than simply introduce into evidence epidemiological studies."[14] Evidence that a chemical *can* cause a disease is no evidence that it *probably* caused the plaintiff's disease.[15] And as *Havner* illustrated, an expert's assurance that a study establishes causation does not make it so. Claimants must have an expert who can answer why a study is reliable, and how the plaintiff's exposure is similar to that of the study's subjects.[16] An expert must also exclude other causes with reasonable certainty,[17] a special problem here as the plaintiffs allege exposure to so many different chemicals. By failing to list any expert who could make this vital connection, the plaintiffs' responses were, for all practical purposes, just like those in *Able Supply*: "We'll tell you later."

We recognize this evidence is hard to obtain, but courts cannot "embrace inferences that good science would not draw."[18] Without it, no one can prepare for trial. Accordingly, we have repeatedly granted

**10.** *Able Supply Co. v. Moye*, 898 S.W.2d 766, 770 (Tex.1995).

**11.** *Id.*

**12.** Specifically, the defendants' interrogatory stated:

Please state the name and address of each and every doctor, physician, psychiatrist, psychologist, counselor, or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the Defendants' products or Defendants' conduct, including the dates of treatment or examination of each such doc-

tor, physician, or other medical practitioner, and the name or identity of the products to which your alleged injury is attributed.

**13.** 953 S.W.2d 706, 719–20 (Tex.1997).

**14.** *Id.* at 720.

**15.** *Id.* at 714–21.

**16.** *Id.* at 720.

**17.** *Id.*

**18.** *Id.* at 727.

mandamus in mass toxic tort cases when plaintiffs have refused to produce basic information like this.[19]

The plaintiffs point out that this case comes to us in a different posture than *Able Supply,* in which the trial court had refused to compel discovery. Here, although the defendants have moved to compel discovery several times, the order they challenge merely sets the case for trial. But that does not make this case different for two reasons.

First, unless we assume the interrogatory was answered in bad faith, there is nothing more to compel. The discovery rules have been amended since *Able Supply,* now requiring that "a party must make a complete response, based on all information reasonably available to the responding party or its attorney at the time the response is made." [20] Parties and attorneys certify this to be true when they sign a discovery response; [21] they can no longer simply choose to delay disclosure until the last minute.[22] Taking their responses at face value, the plaintiffs here and their attorneys certified that *no one* could make the causal connection they needed. Given the short time remaining before trial, the defendants properly objected that this rendered the trial setting

premature; they did not have to spend the few remaining weeks begging for better answers.

Second, *Able Supply* addressed not just inadequate *responses* but inadequate *time* for discovery. There, the trial court never barred discovery completely, as the plaintiffs promised to give better answers 30 days before trial. But we held that was not enough:

> In a suit of this massive nature, which includes disparate exposures to a multitude of products, requiring defendants to wait until 30 days before trial to obtain crucial and probative evidence of a causal connection between their products and plaintiffs' injuries is such a denial of their rights as to go to the heart of the case.[23]

Here, the plaintiffs never promised better answers any earlier; to the contrary, they claimed to have "fully and accurately" responded already.

Thus, the problem here is the same as that in *Able Supply:* too little time between adequate responses and trial for the defendants to have a fair chance to mount a defense. This problem can be addressed from either end: the defendants in *Able Supply* sought to move discovery respons-

---

19. *See Van Waters,* 62 S.W.3d 197, 201 (Tex. 2001); *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 942 (Tex.1998); *Able Supply,* 898 S.W.2d at 768.

20. Tex.R. Civ. P. 193.1; *see also* Alex Wilson Albright, *New Discovery Rules: The Supreme Court Advisory Committee's Proposal,* 15 Rev. of Litig. 275, 292–93 (1996) ("The proposed rules, therefore, require parties to respond, amend, and supplement discovery earlier than required under the current rules. While parties now may wait until as few as thirty days before trial to disclose important requested discovery, Proposed Rule [193.1] requires a party to make full disclosure upon the initial response to written discovery.").

21. *See* Tex.R. Civ. P. 191.3 ("The signature of an attorney or party on a disclosure constitutes a certification that to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made.")

22. *See id.* 193.5(b) (requiring supplemental responses "reasonably promptly after the party discovers the necessity for such a response"), 193.6(a) (requiring exclusion of untimely supplements except on showing of good cause and no unfair surprise or prejudice).

23. *Able Supply,* 898 S.W.2d at 772.

es up; the defendants here sought to move the trial setting back. Defendants are not required to seek both. Instead, the trial court abused its discretion by doing neither.

### III. Mandamus and Appeal

■ Of course, we generally do not consider interlocutory complaints about trial settings.[24] But we generally do not review orders refusing to compel discovery either. Yet we did so in *Able Supply* for three reasons.

First, we have granted mandamus when a discovery order imposes a burden on one party far out of proportion to any benefit to the other.[25] Here, as in *Able Supply,* the burden of making 30 defendants prepare in the dark for 1,900 claims is far out of proportion to the benefit of giving the plaintiffs more time (after five years) to decide who or what injured them. Filing thousands of claims like those here requires only a reasonable inquiry and belief that they are not groundless;[26] recovering on them requires considerably more. In the meantime, thousands of hours and millions of dollars may be needlessly wasted if the claims can never be proved. Mandamus is appropriate in such cases to avoid this "monumental waste of judicial resources."[27]

Second, we have granted mandamus when a denial of discovery goes to the heart of a party's case.[28] There are many cases in which it is perfectly reasonable to conduct discovery up until 30 days before trial.[29] But in suits like this one, denying discovery until then goes to the very heart of this case, as well as what our justice system is supposed to be about.[30]

Third, we have granted mandamus when a discovery order severely compromises a party's ability to present any case at all at trial.[31] No trial was set in *Able Supply,* but the plaintiffs' intention to withhold responses until shortly before then meant the defendants could not prepare a viable defense. Late disclosure may not compromise a defendant when the complaint is minor or causation obvious; but the connection between chemical fumes and cancer is quite different, as is a bellwether trial that may affect thousands of others.

We cannot ignore the trial court's order here without ignoring *Able Supply.* If mandamus was proper there, it must be here too.

### IV. Conclusion

Since *Able Supply,* we have intervened to compel discovery only in complex mass tort cases like this one.[32] Similarly, today's holding is no indication that we intend to intervene in more trial settings. There are good reasons to schedule trial settings well in advance, and few reasons to postpone doing so until discovery is fully

---

**24.** *See Gen. Motors Corp. v. Gayle,* 951 S.W.2d 469, 477 (Tex.1997) ("[T]he denial of a motion for continuance is an incidental trial ruling ordinarily not reviewable by mandamus.").

**25.** *See Able Supply,* 898 S.W.2d at 771 (citing *Walker v. Packer,* 827 S.W.2d 833, 843 (Tex. 1992)).

**26.** *See* Tex.R. Civ. P. 13.

**27.** *Id.*

**28.** *See id.*

**29.** *See, e.g.,* Tex.R. Civ. P. 190.2 (allowing discovery until 30 days before trial in cases involving up to $50,000).

**30.** *See Able Supply,* 898 S.W.2d at 772.

**31.** *See id.*

**32.** *See In re Van Waters & Rogers, Inc.,* 62 S.W.3d 197, 201 (Tex.2001); *In re Colonial Pipeline Co.,* 968 S.W.2d 938, 943 (Tex.1998).

complete. But trial settings, like discovery orders, cannot be used to hold the parties hostage.[33]

It has long been the rule in Texas that plaintiffs bear the burden of pleading and proving how they were injured and by whom.[34] They cannot simply file suit against everyone in the vicinity and demand that the defendants prove otherwise.

Therefore, we direct the trial court to vacate its order setting any of the plaintiffs' claims for trial until the defendants have a reasonable opportunity to prepare for trial after learning who will connect their products to plaintiffs' injuries. The writ will issue only if the trial court fails to comply.

Justice HECHT filed a concurring opinion.

Chief Justice JEFFERSON filed a dissenting opinion, in which Justice O'NEILL, Justice WAINWRIGHT, and Justice JOHNSON joined.

Justice WAINWRIGHT filed a dissenting opinion.

Justice HECHT, concurring.

I join fully in the Court's opinion but add a further word in response to Chief Justice Jefferson's dissent.

The underlying mass toxic tort case, though not unique, is one of a handful of such cases. It was filed in September 1999 for a group of more than 800 plaintiffs, which grew to about 3,000, then shrank. The twelfth amended petition, filed in July 2004, named 1,893 plaintiffs and over thirty defendants. It described the case as "a toxic tort case involving the gross pesticide contamination of Plaintiffs' neighborhood" from 1950–1967. It alleged that "Plaintiffs are now suffering from a multitude of health complaints, including cancers, birth defects, neurological disorders, skin disorders and other illnesses." It also alleged property damage.

Years ago we observed that "[m]ass tort litigation such as this places significant strain on a defendant's resources and creates considerable pressure to settle the case, regardless of the underlying merits."[1] For this reason, mandamus review has been necessary in a few but important instances to prevent the use of such litigation to abuse the civil justice system. For example, in *In re Van Waters & Rogers, Inc.*, 454 plaintiffs sued 55 defendants for personal injuries allegedly due to exposure to a "toxic soup" of chemicals around a manufacturing plant.[2] In response to defendants' interrogatory asking for the names of medical practitioners who could attribute a plaintiff's injury to exposure to a defendant's product, "the plaintiffs uniformly answered they did not recall."[3] When defendants sought additional discovery, the trial court set the claims of twenty plaintiffs chosen by their counsel for trial and abated discovery from any other plaintiffs.[4] By the time the case was decided by this Court, the case had been pending seven years, and still plaintiffs had not provided "basic information regarding

---

**33.** *See Able Supply,* 898 S.W.2d at 772.

**34.** *See Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 68 (Tex.1989) ("A fundamental principle of traditional products liability law is that the plaintiff must prove that the defendants supplied the product which caused the injury.").

**1.** *CSR Ltd. v. Link,* 925 S.W.2d 591, 596 (Tex. 1996).

**2.** 62 S.W.3d 197, 198 (Tex.2001) (per curiam).

**3.** *Id.*

**4.** *Id.* at 198–199.

their individual injuries and the causative chemicals".[5] We directed the trial court to set aside the discovery abatement and trial settings.[6]

In *In re Colonial Pipeline Co.*, 3,275 plaintiffs sued three pipeline owners for personal injuries allegedly due to exposure to fuel that escaped and caught fire when the pipelines ruptured in a flood.[7] In two years of litigation, the plaintiffs had refused to provide any information in discovery about their injuries or what caused them, and the trial court abated discovery from any plaintiffs except ten that their counsel had selected for trial.[8] We directed the trial court to vacate the discovery and scheduling orders that denied the defendants basic information about the plaintiffs' claims.[9]

In *Able Supply Co. v. Moye*, over 3,000 plaintiffs sued nearly 300 defendants for injuries allegedly due to exposure to toxic materials at a steel mill.[10] Asked in an interrogatory to identify medical practitioners who could link injuries with exposure to a defendant's product, no plaintiff had done so in almost eight years that the case had been pending, yet the trial court had denied defendants' motions to compel production of the information.[11] No trial had ever been set.[12] We held that denying defendants "access to the basic facts underpinning the claims against them" while defense costs "mounted to millions of dol-

lars" was indefensible.[13] And we were "acutely concerned" that settlements extracted from defendants in these circumstances went in large part to plaintiffs' counsel.[14] "This Court," we concluded, "will not tolerate the abuses that have occurred in the management of this case."[15]

In each of these mass tort cases, the claims of hundreds or thousands of plaintiffs, enormous in the aggregate, left pending for years despite the absence of critical information regarding the nature and cause of alleged injuries, forced settlements irrespective of the claims' merits, if any. In other cases, setting the widely disparate claims of a few plaintiffs accomplished the same end. In *In re Ethyl Corp.*, 459 workers or their families were suing one or more of 69 premises owners for exposure to asbestos.[16] The claims of 22 workers against one or more of five defendants were set for a single trial.[17] The workers' alleged exposures ranged from just over a year to more than 38 years, their alleged injuries differed widely in severity, and each had been exposed to asbestos at one or more sites other than those of the defendants.[18] Aggregating so many disparate claims for trial, we noted, could easily overwhelm a jury, resulting in prejudice and confusion.[19] In a companion case, *In re Bristol–Myers Squibb Co.*, the

5. *Id.* at 200.

6. *Id.* at 201.

7. 968 S.W.2d 938, 940–941 (Tex.1998) (per curiam).

8. *Id.* at 941.

9. *Id.* at 943.

10. 898 S.W.2d 766, 767–768 (Tex.1995).

11. *Id.* at 768.

12. *Id.*

13. *Id.*

14. *Id.* at 772.

15. *Id.* at 773.

16. 975 S.W.2d 606, 608–609 (Tex.1998).

17. *Id.* at 609.

18. *Id.*

19. *Id.* at 614.

trial court ordered a single trial of four cases involving the breast-implant claimants of nine plaintiffs against three groups of defendants.[20] Unlike asbestos litigation, breast-implant litigation was not a mature tort,[21] and the concerns posed by aggregate trial were aggravated by the courts' lack of experience with such claims. In each case we set out factors to be considered in aggregating claims for trial but concluded, based on the records before us, that the trial courts had not been shown to have clearly abused their discretion.[22] But in *In re Van Waters & Rogers, Inc.*, in a proceeding subsequent to the one discussed above, we applied the factors set out in *Ethyl* and concluded that in consolidating twenty plaintiffs' disparate claims for trial, the trial court had clearly abused its discretion.[23]

The patterns of abuse in these cases are repeated in the present one. Early on, the defendants sent the plaintiffs this basic interrogatory:

> Please state the name and address of each and every doctor, physician, psychiatrist, psychologist, counselor, or other medical practitioner who has attributed your alleged injury made the basis of this lawsuit to exposure to the Defendants' products or Defendants' conduct, including the dates of treatment or examination of each such doctor, physician, or other medical practitioner, and the name or identity of the products to which your alleged injury is attributed.

Though plaintiffs concede they cannot prevail without expert testimony from such professionals, they all responded, "not applicable", or that no treating physician had made the attribution. Plaintiffs stated in their response to the petition for mandamus that "[t]his evidence fully satisfies every requirement set out by this Court to apprise a Defendant of the allegations pending against it." Plaintiffs' counsel also asserted at oral argument that it would not be an abuse of discretion for the trial court to set the case for trial even though no evidence of causation had been produced.[24]

Plaintiffs first moved for a trial setting in March 2004, requesting that five plaintiffs' claims be tried. The trial court granted the motion in August. In September, defendants petitioned the court of appeals for mandamus relief, which the court denied in November. Days later defendants petitioned this Court for relief.

Defendants' interrogatory is essentially identical to the one in *Able Supply*.[25] The

---

**20.** 975 S.W.2d 601, 602 (Tex.1998).

**21.** *Id.* at 603.

**22.** *Id.* at 603–605; *In re Ethyl Corp.*, 975 S.W.2d at 610–617.

**23.** 145 S.W.3d 203, 211 (Tex.2004).

**24.** The following colloquy occurred at oral argument:

> "JUSTICE: But if you have a mass tort case like this one, and you have hundreds of plaintiffs, and you have scores of defendants, you think that it is unreasonable to put even one case to trial without evidence of causation, or not? I'm not sure.

> "PLAINTIFFS' COUNSEL: I believe that if the trial court has examined the interrogatories under a proper motion to compel, has determined that the responses to those interrogatories are inadequate, that there is no information showing any causative link, that I don't know of anything in Texas law that would allow a *sua sponte* summary judgment on the basis of no evidence. But I would certainly say that the trial court would have within its discretion the power to not set that case to trial.

> "JUSTICE: Of course, the trial court always has that power. What I'm asking is, if the trial court set the case for trial nonetheless, would that be an abuse of discretion?

> "PLAINTIFFS' COUNSEL: No. I don't believe it would be."

dissent argues "there is a critical difference" between that case and the present one, namely, there "the plaintiffs had refused to answer" the interrogatory and the trial court had refused to compel them to do so, while here defendants "do not seek an order compelling an answer" but instead an order prohibiting a trial setting unless the plaintiffs provide evidence of causation.[26] Relators, the dissent argues, are not entitled to mandamus relief without first moving to compel answers to their interrogatory. The dissent ignores the fact that relators' objection to going to trial before plaintiffs have produced evidence of causation is tantamount to a request for such evidence and the trial court's order setting trial is tantamount to a refusal to compel its production. The trial court's position is clear: the plaintiffs need not produce evidence of causation for thousands of plaintiffs for their claims to remain pending and even be set for trial. When a "request [for relief] would have been futile and the refusal little more than a formality", they are not prerequisites to mandamus review.[27]

The dissent has missed the point of our decision in *Able Supply.* It was not that parties should respond meaningfully to discovery requests, although they certainly should, but that plaintiffs in a massive case cannot stonewall production of critical evidence to deprive defendants of their right to a fair trial:

> In a suit of this massive nature, which includes disparate exposures to a multitude of products, requiring defendants to wait until 30 days before trial to

obtain crucial and probative evidence of a causal connection between their products and plaintiffs' injuries is such a denial of their rights as to go to the heart of the case.[28]

In answer to the question, what evidence is there of causation, the difference between a blank and "none" or "not applicable" is not "critical"; it is indiscernible.

Plaintiffs' position is that they have fully answered the defendants' interrogatory regarding causation evidence, that any motion to compel further response should be denied, that any motion for summary judgment for want of essential evidence should also be denied, and that the case should go to trial in its present posture. No one questions our observation that in a massive case like this, plaintiffs' refusal to provide defendants meaningful discovery on critical issues forces settlements irrespective of the merits of plaintiffs' claims. Deprived of such basic procedural protections, a defendant can scarcely risk further abuse. And that, the dissent argues, is really too bad, but there is just nothing that can be done without legislation or a change in procedural rules. That the civil justice system cannot protect litigants' basic rights to a fair trial without the Legislature's assistance would be a humiliating concession for the Court to make.

The dissent "can only surmise" that "the Court's motivation is to evade the laborious process inherent in rulemaking or legislation".[29] The dissent need not disparage the Court's motivations. The Court's purpose here is to correct isolated abuse that does not occur often enough—fortunately, to the credit of existing statutes and proce-

**25.** 898 S.W.2d 766, 768, 773 (Tex.1995).

**26.** *Post* at 665.

**27.** *In re Perritt,* 992 S.W.2d 444, 446 (Tex. 1999) (citing *Terrazas v. Ramirez,* 829 S.W.2d 712, 723 (Tex.1991)).

**28.** *Id.* at 772.

**29.** *Post* at 666.

dures—to require corrective legislation or rules, but nevertheless threatens extraordinary injury, not only to the parties in a case, but to the integrity of the justice system. This is a proper function of extraordinary relief, as the Court said in *In re Prudential Insurance Co. of America*,[30] citing commentary by Professors Wright, Miller, and Cooper: mandamus review "that responds to occasional special needs provides a valuable ad hoc relief valve for the pressures that are imperfectly contained by the statutes permitting appeals from final judgments and interlocutory orders".[31] Occasional intervention may be necessary, they added, "simply to bring the balancing perspective that appellate review is intended to provide in controlling the practices as well as the substantive decisions of trial courts."[32] Correcting isolated problems avoids the injustice of inaction while obviating the need for broader statutory appellate review.[33]

Finally, the dissent argues that this proceeding has been mooted by plaintiffs' supplementation of discovery while it has been pending. The dissent stresses that relators have not challenged the sufficiency of the new discovery responses, but the supplemental responses, whether adequate or not, do not moot this proceeding because there remain 1,888 plaintiffs for which evidence of causation still has not been provided after more than seven years of litigation, and plaintiffs refuse to state whether they will continue to request that more trials be set without such evidence. The dissent argues that this case does not fall within the mootness exception for issues "capable of repetition but evading review" because there must be "a reasonable expectation that the same action will occur again if the issue is not considered",[34] and "we have no indication that is the case here."[35] Actually, we do, if only in the fact that the supplementation came not only seven years after the case was filed, but even after the date set for the first trial of a plaintiff's claims, after we have repeatedly required that causation evidence be produced in discovery well in advance of trial in other such cases, and after we have refused to approve separate trials of groups of plaintiffs with dissimilar claims used to pressure settlements. What we have yet to see is some indication that the problems are over.

Chief Justice JEFFERSON, joined by Justice O'NEILL, Justice WAINWRIGHT, and Justice JOHNSON, dissenting.

On August 9, 2004, the trial court signed an order identifying five trial plaintiffs,

**30.** 148 S.W.3d 124 (Tex.2004).

**31.** 16 CHARLES ALAN W. RIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3934.1, at 572, 574 (1996), *cited in In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 137 n. 53.

**32.** *Id.*

**33.** *Id.* at 137 n. 54 (citing George C. Pratt, *Extraordinary Writs*, in 19 MOORE'S FEDERAL PRACTICE § 204.01[2][b], at 204–7 (3d ed. 2004) ("In order to meet the demands of justice in individual cases, discretionary review is preferable to enlarging by judicial interpretation the categories of interlocutory orders that are appealable as of right. General categories of orders that are appealable as of right often include many orders that should not be appealable at all. Review by extraordinary writ allows the circuit courts to retain the final judgment rule and avoid piecemeal appeals, yet be able to respond to the exceptional case that should be reviewed prior to final judgment. Thus, [mandamus] affords an avenue of relief to litigants and a tool for the courts to supervise the proper administration of justice.")).

**34.** *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999).

**35.** *Post* at 666.

consolidating their claims for trial, and setting a February 14, 2005 trial date. It later reset the trial for June 6, 2005. Relators sought mandamus relief from the consolidation order. The landscape has changed since then. On May 20, 2005, after this Court stayed the case, the trial court vacated its previous consolidation order and directed that only Guadalupe Garza's personal injury claims proceed to trial. After that, Garza and other plaintiffs supplemented their discovery responses—identifying causation witnesses—and produced affidavits relators say they require for trial. Consequently, the two bases upon which relators sought mandamus—improper consolidation and a trial setting before causation evidence had been produced—are no longer at issue. The Court nevertheless uses this case to create a procedural rule that, for the first time, creates an inactive docket for "complex mass tort cases like this one." —— S.W.3d ——. While I can appreciate the utility of such a rule, I cannot countenance its adoption in a moot case. Accordingly, I respectfully dissent.

At the time relators filed their mandamus petition, their complaint focused on the consolidation order, as they alleged that the "trial court's August 9, 2004 order is an abuse of discretion that leaves Relators without an adequate remedy by appeal." They presented two issues: (1) whether it was an abuse of discretion for the trial court to consolidate cases involving five different plaintiffs, in contravention of *In re Van Waters & Rogers, Inc.* and in the absence of an adequate response to the *Able Supply* interrogatory; and (2) whether there was an adequate remedy by appeal. Relators asserted that "the issue in this mandamus proceeding is *not* the plaintiffs' failure to answer the *Able Supply* Interrogatory, but rather the effect of that failure on trial consolidation."

(Emphasis in relators' brief on the merits, at 30–31.)

Today, despite the trial court's deconsolidation, the Court conditionally grants the writ to resolve an *Able Supply* problem that is not, strictly speaking, before us. *See Able Supply v. Moye*, 898 S.W.2d 766, 768 (Tex.1995). The Court prohibits the trial court from setting "any of the plaintiffs' claims for trial until the defendants have a reasonable opportunity to prepare for trial after learning who will connect their products to plaintiffs' injuries." But the plaintiffs have supplemented their responses to provide that information. The Court has thus abated trial until the real parties satisfy a condition that has already taken place. While I can appreciate the Court's frustration with the procedural history of this case, mandamus is inappropriate when: (1) plaintiffs have supplemented their discovery answers to reveal the names of those who purport to connect the products with the injuries; and (2) the defendants do not contend that the supplementation is inadequate under *Able Supply*.

In September 2005, plaintiffs supplemented their discovery responses with reports from nine experts: a hematologist/oncologist, two toxicologists, a civil engineer, an industrial hygienist, two environmental engineers, an epidemiologist, and a former DuPont research chemist. One of those experts, Frank Gardner, M.D., clinical professor of medicine at the University of Texas Medical Branch in Galveston, concluded (after reviewing Garza's hospital and clinical records) that:

[Garza] lived in the vicinity of the HS facility, and had prolonged exposure to pesticides. The chronic exposure to high risk levels of organochlorine pesticides were the cause, with more probability than not, for [her] onset of non-Hodgkins lymphoma.

William R. Sawyer, Ph.D., a toxicologist, calculated Garza's exposure doses of organochlorine pesticides and concluded:

> I am certain, to within a reasonable degree of toxicological certainty that Ms. Garza's chronic exposures to DDT, dieldrin, BHCs, and toxaphene released from Hayes–Sammons significantly contributed to the onset of her NHL. My review of her historical medical records, direct interview, and inspection of her 1016 Nicholson Street home failed to provide any other significant occupational or environmental exposures contributing to the onset of her NHL.

The Court's opinion does not analyze these expert reports, perhaps because they were filed after the trial court's order setting Garza's case for trial. But we cannot ignore the fact of their production. Garza has supplemented her response to the *Able Supply* interrogatory, and the trial court is in the best position both to evaluate the reports and to fashion relief where appropriate. Thus far, relators have not challenged the reports' adequacy in the trial court, and we should not presume that the court would abuse its discretion if called upon to make that determination.[1]

Our rules provide remedies for incomplete discovery responses. Relators can move to compel adequate responses, or they may seek sanctions for discovery abuse; they may file no-evidence motions for summary judgment before trial or motions for directed verdict during trial.[2]

Relators have not availed themselves of the pretrial methods, instead seeking extraordinary relief from this Court in the first instance. The Court likens this case to *Able Supply*, but there is a critical difference. Before the *Able Supply* defendants sought mandamus relief, the plaintiffs had refused to answer, and the trial court had declined to compel, the answer to the defendants' interrogatories. *Able Supply*, 898 S.W.2d at 768. Only then did we order the trial court to grant the motion to compel.

By contrast, relators here do not seek an order compelling an answer to the *Able Supply* question, but rather a special rule for, as the Court puts it, "complex mass tort cases like this one." —— S.W.3d ——. After the trial court deconsolidated the cases, relators' issue shifted—they now seek an "order prohibiting the trial court from setting *any* plaintiff's claim for trial unless that plaintiff has first provided an adequate answer to the *Able Supply* Interrogatory." (Emphasis added.) At argument, relators conceded that they were asking us to create, in effect, an inactive docket for mass tort cases.

In other areas of the law, the Legislature has created rules for certain types of cases in which a threshold showing is necessary before the case may proceed. In cases involving health care liability claims, for example, an expert report showing causation must be filed not later than 120

---

1. Although we stayed the underlying proceedings, relators could have moved to lift the stay so that the trial court could make this determination, just as the real parties moved to lift the stay so that the trial court could consider their motion to deconsolidate. *See also Terrazas v. Ramirez*, 829 S.W.2d 712, 715 (Tex. 1991) (granting parties' motion to lift stay so that trial court could consider proposed settlement).

2. Rule 215.1(b)(3) provides: "[I]f a party fails ... to answer an interrogatory submitted under Rule 197; ... the discovering party may move for an order compelling ... an answer ... or apply to the court in which the action is pending for the imposition of any sanction authorized by Rule 215.2(b) without the necessity of first having obtained a court order compelling such discovery." Tex.R. Civ. P. 215.1(b)(3). Moreover, "an evasive or incomplete answer is to be treated as a failure to answer." *Id.* 215.1(c).

days after suit is filed, or the case will be dismissed. TEX. CIV. PRAC. & REM.CODE § 74.351. For claims involving asbestos or silica, expert reports must be served on defendants within thirty days of their answer or appearance date. TEX. CIV. PRAC. & REM.CODE § 90.006(a). Similarly, through our rulemaking process, we have provided that in any pending case, after an adequate time for discovery, a party may move for summary judgment on the grounds that there is no evidence of causation. TEX.R. CIV. P. 166a(i).

Rather than make such changes by judicial decree, the better practice is to enact these reforms in conjunction with our rulemaking procedure, or when public policy mandates, by legislation.[3] A statute or rule could provide the precision that is lacking in the Court's opinion. For example, what is a "complex mass tort case[ ]"? —— S.W.3d at ——. Do class actions qualify? What about multidistrict litigation? What is the requisite number of plaintiffs? What time period gives defendants a "reasonable opportunity to prepare for trial after learning who will connect their products to plaintiffs' injuries"? *Id.* at ——. What is the penalty for noncompliance? Under the Court's new rule, these determinations will be made on an ad hoc basis, with little guarantee of predictability or uniformity.

More puzzling is the effect of the Court's ruling on this case. The Court orders that, before trial may commence, the plaintiffs must reveal the witnesses who will testify on causation and give the defendants a reasonable opportunity to prepare for trial after receiving that information. But Garza supplemented her

discovery responses in September 2005, almost two years before the Court conditionally issued today's writ. Presumably, therefore, when the stay is lifted, the trial court will be free to set Garza's case for trial. I can only surmise, then, that the Court's motivation is to evade the laborious process inherent in rulemaking or legislation and create a blanket rule barring trial in any "mass tort" case until the plaintiff names a causation expert. This should occur by rule or statute, after comment, rather than by opinion when the question presented has disappeared from the case.

The Court contends the case is not moot because its stay order "preserved the parties' positions as they were at the time, not as they hustled to change them thereafter." —— S.W.3d ——. But we do not grant mandamus relief when it would be of no practical effect, or "if for any reason it would be useless or unavailing." *Dow Chem. Co. v. Garcia,* 909 S.W.2d 503, 505 (Tex.1995) (quoting *Holcombe v. Fowler,* 118 Tex. 42, 9 S.W.2d 1028, 1028 (Tex. 1928)). Nor do we grant it before the trial court has been asked to act. *Axelson, Inc. v. McIlhany,* 798 S.W.2d 550, 556 (Tex. 1990) (noting that mandamus was "improper" when relators could not "point to an order of the trial court refusing their most recent request" to conduct discovery). The Court seems to recognize as much, relying on the "capable of repetition but evading review" exception to the mootness doctrine. *Blum v. Lanier,* 997 S.W.2d 259, 264 (Tex.1999). But that "rare" exception requires a reasonable expectation that the same action will recur (with no appellate recourse) if the writ were withheld, and we have no indication that is the case. *Id.*

---

**3.** Our rulemaking procedures include consideration of comments from the bench, bar, and the general public, and we have modified or changed each set of civil procedure, evidence, and appellate rules proposals since 1997 as a

result of those comments. http://www. supreme.courts.state.tx.us/advisory_archives/ ra_100903.htm (last visited June 13, 2007 and copy available in Clerk of Court's file).

Utilizing the exception to justify mandamus relief here can only be based on an expectation of the trial court's future abuse of discretion, but we generally presume that our judges follow the law. Finally, the case will not "evade review." If the discovery responses are inadequate and the trial court fails to compel further response, relators have the right to mandamus relief, as recognized in *Able Supply*.

While I agree that defendants in mass tort cases face difficult hurdles in preparing for trial, and while I also agree that causation-related discovery must not be delayed,[4] I disagree that this case presents the opportunity for us to create special rules for such cases. The trial court withdrew its consolidation order. Garza has supplemented her discovery responses, and the trial court has not been asked to evaluate their adequacy. I would deny mandamus relief.

### Justice WAINWRIGHT, dissenting.

The several opinions in this case cogently set forth different positions. The truth is we all agree that improper tactical gamesmanship that skews accurate outcomes in the search for justice in the courts should be halted. In extraordinary cases in which the trial court has abused its discretion and there is no adequate remedy by appeal, it should be halted by mandamus. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004). The question in this case is whether relators have shown that the Court should grant relief using the vehicle of mandamus. Relators decry being put to trial with no evidence of causation to support the claims of hundreds of plaintiffs against the dozens of defendants. However, relators in this case did not tee up their no-

evidence arguments in the trial court by filing either 1) a motion for summary judgment under Texas Rule of Civil Procedure 166a(c) or 166a(i) or 2) a motion under Texas Rule of Civil Procedure 215.1 to compel the claimants to provide interrogatory answers that comply with *Able Supply Company v. Moye*, 898 S.W.2d 766, 771 (Tex.1995). If they had, and the trial court then abused its discretion by making an erroneous legal ruling, refusing to set the motion for a hearing or refusing to timely rule, I would join the Court's opinion in this type of mass tort case. None of these things occurred. In fact, there is not even an existing trial court order about which the relators complain.

If we do not require litigants to avail themselves of the existing avenues for relief before seeking unique and extraordinary mandamus remedies, then mandamus relief will cease being extraordinary in the manner our precedents prescribe. The rules of procedure provide methods to address the complaints in this case. I depart from the Court in this case over the propriety of granting relief by mandamus.