NUMBERS 13-08-00206-CV

 13-08-00678-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN RE: ALLIED CHEMICAL CORPORATION, ET AL.

 


On Petition for Writ of Mandamus

 


O P I N I O N



Before Chief Justice Valdez and Justices Garza and Benavides


Opinion by Justice Garza



 In September 1999, hundreds of plaintiffs sued more than thirty defendants, seeking
damages for a vast array of injuries allegedly caused by a "toxic soup" of pesticides
released into the community from facilities in Mission, Texas, operated by Hayes-Sammons Chemical Co. ("Hayes-Sammons") between 1950 and 1967. Nine years after
the suit was initiated, the claims of one plaintiff, Guadalupe Garza, have been severed and
set for trial.

 In a petition for writ of mandamus filed on April 16, 2008, (1) the defendants, (2)
comprised mostly of manufacturers and suppliers of the chemicals used in the pesticide
facilities, ask us to order the trial court to grant their motions for summary judgment and
their fourth motion to compel discovery. In a separate petition filed on November 25,
2008, (3) the defendants ask us to compel the trial court to vacate its orders severing Garza's
claims and setting them for trial. We deny both petitions in part and conditionally grant the
writs in part. 

I. Background

 Multiple petitions for writ of mandamus have been filed with this Court by the
defendants in this case. In 2004, the defendants asked us to compel the trial court to
vacate its order consolidating five plaintiffs' claims and setting them for trial, asserting that
those plaintiffs had not timely provided adequate discovery responses. We denied the
petition. In re Allied Chem. Corp., No. 13-04-00491-CV, 2004 Tex. App. LEXIS 9931, at
*1-2 (Tex. App.-Corpus Christi Nov. 4, 2004, orig. proceeding) (per curiam) (mem. op.). 
In a five-to-four decision, the Texas Supreme Court subsequently granted mandamus
relief, noting that "in mass tort cases involving hundreds of parties and complicated
causation questions, a trial judge could not postpone responses to basic discovery until
shortly before trial." In re Allied Chem. Corp., 227 S.W.3d 652, 655 (Tex. 2007) (orig.
proceeding) (citing Able Supply Co. v. Moye, 898 S.W.2d 766, 772 (Tex. 1995)); but see
id. at 664 (Jefferson, J., dissenting) (noting that plaintiffs had already supplemented their
discovery responses and mandamus was inappropriate because the case was moot). The
plaintiffs have since repeatedly amended their discovery responses. Whereas the 2004
petition was concerned with the timeliness of plaintiffs' responses, we are now called upon
to evaluate, among other things, the adequacy of those responses.

 The defendants first served their master set of interrogatories on plaintiffs on
November 12, 2001. The master set included the following Interrogatory 20, known as the
Able Supply interrogatory:

Please state the name and address of each and every doctor, physician,
psychiatrist, psychologist, counselor, or other medical practitioner who has
attributed your alleged injury made the basis of this lawsuit to exposure to
the Defendants' products or Defendants' conduct, including the dates of
treatment or examination of each such doctor, physician, or other medical
practitioner, and the name or identity of the products to which your alleged
injury is attributed.


See Able Supply, 898 S.W.2d at 768 (mandating trial court to compel mass tort plaintiffs
to answer similar interrogatory). (4)

 On June 25, 2002, the defendants filed their first motion to compel, seeking an order
compelling the plaintiffs to answer Interrogatories 15 (asking plaintiffs to identify the
product or products that caused their injuries), 16 (asking which defendants produced the
products that caused their injuries), 17 (asking which facility was the source of the products
that caused their injuries), and 20 (the Able Supply interrogatory). (5) The trial court granted
this motion on October 29, 2002, ordering the plaintiffs "to provide full, complete, and
plaintiff-specific answers to Interrogatories 15, 16, 17, and 20" on or before December 2,
2002.

 On December 2, 2002, the plaintiffs supplemented their answers to the
interrogatories. In response to Interrogatories 15 and 16, the plaintiffs provided a general
list of products produced by each defendant. The response did not indicate which plaintiffs
had been exposed to which products. In response to Interrogatory 17, the plaintiffs
identified "the Hayes-Sammons faciliti(es) located in Mission, Texas" as the location from
which the products causing their injuries originated.

 In response to the Able Supply interrogatory, the plaintiffs stated that "none of their
treating physicians have told them that their health condition(s) are or were attributable to
their exposure" to defendants' products. The response to Interrogatory 20 also included
an expert report authored by Sandra Mohr, M.D., stating that "most primary care physicians
are not prepared by virtue of their clinical training to assign a chemical etiology to the
diagnosis of a disease and that Occupational and Environmental Medicine physicians are
the most appropriate specialists to determine chemical etiology of a disease."

 The defendants then filed a second motion to compel on April 26, 2004, again
asking the trial court to compel "plaintiff-specific" answers to the Able Supply interrogatory. 
The trial court granted this second motion as well, ordering all plaintiffs to "supplement
Interrogatory No. 20 (i.e., the Able Supply Interrogatory) . . . in accordance with the Court's
October 29, 2002 Order." In response, the plaintiffs filed supplemental Able Supply
answers on July 19, 2004, which consisted of a three-page affidavit authored by Michael
Wolfson, M.D., a physician trained in occupational and environmental medicine. Dr.
Wolfson's affidavit was accompanied by a 1,848-page chart entitled "Exhibit A," which
listed each individual plaintiff's symptoms and the pesticides produced at the Hayes-Sammons plant which could have caused those symptoms. The chart included references
to academic literature which Dr. Wolfson claimed supported his assertions that the various
chemicals could cause the various symptoms. An example of one plaintiff's entry on the
chart is as follows:


NAME
PLAINTIFF
ID
SYMPTOM
PESTICIDES
SUPPORTIVE
LITERATURE


Acevedo,
Alfredo
703010
Coughing
2,4,5-T

2,4-D

Chlordane

DDT/DDE/DDD

Dieldrin/Aldrin/Endrin

Lindane

Malathion

Paris Green
(Arsenic)

Phosdrin

Toxaphene
Alexandersson
(1982)

Belomyttseva (1969)

Berwick (1970)

Davies (1983)

Ditraglia (1981)

Hayes (1982)

Holmes (1974)

Jenkins (1964)

McGee (1952)

Morton (1989)

Ramu (1973)

Rauch (1990)

Weiner (1961)

Zivot (1993)

 Dr. Wolfson noted in his affidavit that the chart provided only a general statement
about which pesticides could produce certain symptoms, and that it did not purport to make
any specific statements about causation regarding any individual plaintiff. Specifically, Dr.
Wolfson stated:

Exhibit "A", attached to this affidavit, is a summary of my opinions. My
opinions at this time are limited to the general causation of medical harm by
pesticides (i.e. whether a pesticide is capable of causing a particular disease,
condition or injury) and not specific causation (i.e. whether a pesticide, in
fact, caused a plaintiff's disease, condition or injury).


 Subsequently, on August 9, 2004, the trial court granted a motion filed several
months earlier to consolidate five plaintiffs' claims and set them for trial. Trial was set for
the five plaintiffs--Irma Gomez, Sandra Aguero, Noelia O. Morales, Garza, and Jose Maria
Solis--for February 14, 2005.

 Certain defendants then moved for no-evidence summary judgment on September
9, 2004, claiming that the plaintiffs had still not adequately answered the Able Supply
interrogatory. Certain other defendants filed a third motion to compel with the trial court
seeking to compel an adequate response. At a hearing on November 22, 2004, the trial
court denied both motions.

 On February 14, 2005, four of the five trial plaintiffs--Garza, Morales, Gomez and
Solis--filed an additional supplemental response to Interrogatory 20, identifying nine
experts that would testify on their behalf at trial: a hematologist/oncologist, two
toxicologists, a civil engineer, an industrial hygienist, two environmental engineers, an
epidemiologist, and a former DuPont research chemist.

 On March 3, 2005, defendants Aventis CropScience USA ("Aventis") and Maxus
Energy Corp. ("Maxus") filed no-evidence and traditional motions for summary judgment,
contending that they never sold or delivered any of the pesticides at issue in the case to
the Hayes-Sammons facility.

 Subsequently, on June 15, 2007, the Texas Supreme Court granted mandamus
relief to all defendants, directing the trial court "to vacate its order setting any of the
plaintiffs' claims for trial until the defendants have a reasonable opportunity to prepare for
trial after learning who will connect their products to plaintiffs' injuries." In re Allied Chem.
Corp., 227 S.W.3d at 659. The Court found specifically that the defendants were entitled
to adequate responses to the Able Supply interrogatory establishing the causation element
of their claims. Moreover, the Court noted that mandamus was an appropriate remedy
because: (1) making thirty defendants "prepare in the dark for 1,900 claims is far out of
proportion to the benefit of giving the plaintiffs more time (after five years) to decide who
or what injured them"; (2) allowing discovery to continue to thirty days before trial amounts
to a "denial of discovery . . . go[ing] to the very heart of this case"; and (3) "the plaintiffs'
intention to withhold responses until shortly before [trial] meant the defendants could not
prepare a viable defense." Id. at 658 (citing Able Supply, 898 S.W.2d at 771, 772). In
response, on July 17, 2007, the defendants filed a fourth motion to compel answers to the
Able Supply interrogatory, asking the trial court to mandate "complete and plaintiff-specific
responses," and to order that a failure to so respond by any plaintiff within 30 days "shall
result in severance and dismissal with prejudice."

 One week prior to its decision in In re Allied Chemical Corp., the Texas Supreme
Court handed down Borg-Warner Corp. v. Flores, 232 S.W.3d 765 (Tex. 2007), which
addressed the adequacy of causation evidence in an asbestos exposure case. The Borg-Warner court held that, in order to establish causation, the plaintiff must provide
"[d]efendant-specific evidence relating to the approximate dose to which the plaintiff was
exposed, coupled with evidence that the dose was a substantial factor in causing the
asbestos-related disease." Id. at 773. In response to this decision, the defendants in the
instant case propounded an additional interrogatory on plaintiffs on July 2, 2007, asking
the following:

For each Defendant listed in Plaintiffs' Thirteenth Amended Petition or any
Defendant listed in a previous petition that has settled, please provide:


a. The approximate dose of each product manufactured or sold by each
Defendant to which Plaintiff was exposed that is alleged to have
caused harm to Plaintiff;


b. The methodology used to calculate the dose; and


c. Evidence that the dose was a substantial factor in causing the harm
to Plaintiff.


After over two months, having failed to receive an answer to this interrogatory--which the
defendants style "the Borg-Warner interrogatory"--the defendants filed a motion to compel
an answer with the trial court.

 On September 11, 2007, Garza provided an amended Able Supply answer,
including reports authored by the nine experts identified in the earlier response. In one
report, Frank Gardner, M.D., a clinical professor of medicine, concluded after reviewing
Garza's hospital and clinical records that: "[Garza] lived in the vicinity of the [Hayes-Sammons] facility, and had prolonged exposure to pesticides. The chronic exposure to
high risk levels of organochlorine pesticides were the cause, with more probability than not,
for [her] onset of non-Hodgkins lymphoma." In another report, William R. Sawyer, Ph.D.,
a toxicologist, calculated Garza's exposure doses of organochlorine pesticides and
concluded:

I am certain, to within a reasonable degree of toxicological certainty that Ms.
Garza's chronic exposures to DDT, dieldrin, BHCs, and toxaphene released
from Hayes-Sammons significantly contributed to the onset of her NHL [non-Hodgkin lymphoma]. My review of her historical medical records, direct
interview, and inspection of her 1016 Nicholson Street home failed to provide
any other significant occupational or environmental exposures contributing
to the onset of her NHL.


 On October 9, 2007, Garza provided an amended answer to the so-called Borg-Warner interrogatory. The response included detailed calculations of the amount of the
chemicals to which Garza was exposed. The response included precise estimates as to
Garza's exposure to each of the chemicals based on dermal absorption, inhalation, and
ingestion of dust and soil, and concluded that Garza had been exposed to the following
doses (6):


DDT
2.2 × 10-4 mg/kg/day
Dieldrin
1.95 × 10-4 mg/kg/day
BHC
1.1 × 10-2 mg/kg/day
Toxaphene
2.0 × 10-5 mg/kg/day

 Garza's October 9, 2007 supplemental response also contained a list identifying
certain defendants which, she alleged, provided the specific pesticides that caused her
injuries. The list, included as a supplemental response to defendants' Interrogatory 16,
stated:

Guadalupe Garza supplements this response and identifies the following
manufacturers and/or distributors of the pesticides and the specific
pesticides sold or otherwise distributed to Hayes-Sammons and which are
the cause of her Non-Hodgkins' Lymphoma:



COMPANY
CHEMICAL(S)
Allied Chemical Corporation
BHC, DDT
Aventis Cropscience USA
Holdings, Inc. d/b/a Aventis
Cropscience USA
BHC
Maxus Energy Corporation
f/k/a Diamond Shamrock
Corporation
DDT
[etc.] . . .


Accompanying Garza's amended responses was a motion to sever her claims and a
request to set her claims for trial.

 At a hearing on October 10, 2007, the trial court considered the motion for summary
judgment filed by Aventis and Maxus, the defendants' fourth motion to compel an adequate
Able Supply answer, the defendants' motion to compel Borg-Warner answers, as well as
Garza's motion for severance and request for trial setting. At the hearing, the plaintiffs
conceded that they are obligated to answer the Borg-Warner interrogatory, but merely
argued that they ought to be given the opportunity to do so "on a rolling basis rather than
all 1,800 at once." The defendants, on the other hand, argued that not only was Dr.
Wolfson's affidavit and chart insufficient to adequately answer the Able Supply
interrogatory on behalf of the non-trial plaintiffs, but also that Garza's supplemental
responses to the Able Supply and Borg-Warner interrogatories were inadequate because
they are not "defendant-specific." After hearing argument, the court granted the plaintiffs'
motion to sever Garza's claims on December 11, 2007, and took the motion for summary
judgment and the two defendants' motions to compel under advisement. (7)

 Subsequently, on October 18, 2007, Garza filed a second set of supplemental
answers to the interrogatories, including a report by Marco Kaltofen, a professional
engineer, which attempted to ascertain the source of the chemicals identified in the Borg-Warner response as causing Garza's injuries. Kaltofen's report referenced historical sales
records, audit records, and deposition testimony, and concluded:

In summary based on the manufacturing and distribution history of the
defendants, the evidence of sales to Hayes Sammons and the testing
results, it is my opinion that the following manufacturers supplied the
identified products to the Hayes Sammons facility during the time period in
question:


Allied--DDT


Syngenta, Zeneca AG, ICI Americas (all formerly doing business as
Geigy)--DDT


Maxus (formerly doing business as Diamond Alkali)--DDT


Dupont--DDT


Lebanon, as distributor for Montrose Chemical--DDT


Montrose Chemical--DDT


Pharmacia Corporation (formerly doing business as Monsanto)--DDT


Velsicol--DDT


Shell--Dieldrin


PPG--BHC


Hercules--Toxaphene


 On September 12, 2008, the trial court denied the defendants' motions to compel
as to Garza and granted Garza's motion for trial setting. By a scheduling order entered on
October 6, 2008, the court set Garza's claims for trial on June 15, 2009.

 In their April 16, 2008 petition for writ of mandamus, the defendants challenge the
trial court's October 10, 2007 ruling in trial court cause number C-4885-99-F denying their
motions for summary judgment and their fourth motion to compel an adequate answer to
the Able-Supply interrogatory. (8) The defendants also assert that the trial court abused its
discretion by failing to rule on their motion to compel answers to the Borg-Warner
interrogatory.

 Defendants' November 25, 2008 petition, addressing Garza's severed claims in trial
court cause number C-4885-99-F(10), asks that we compel the trial court to (1) vacate its
December 11, 2007 order severing Garza's claims, (2) vacate its October 6, 2008 order
denying defendants' motions to compel and setting Garza's claims for trial, and (3) grant
defendant Aventis's no-evidence motion for summary judgment.

II. Standard of Review

 Mandamus will issue to correct a clear abuse of discretion for which the remedy by
appeal is inadequate. In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 135-36 (Tex.
2004). A trial court abuses its discretion when it acts in an unreasonable or arbitrary
manner or, stated differently, when it acts without reference to guiding rules and principles.
See, e.g., Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991). Additionally,
an abuse of discretion occurs when the trial court clearly fails to analyze or apply the law
correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992).

 An appellate remedy is "adequate" when the benefits to mandamus review are
outweighed by the detriments. In re Prudential Ins. Co. of Am., 148 S.W.3d at 136. When
the benefits outweigh the detriments, appellate courts must consider whether the appellate
remedy is adequate. Id. Nevertheless, in this context, "'adequate' . . . has no
comprehensive definition; it is simply a proxy for the careful balance of jurisprudential
considerations that determine when appellate courts will use original mandamus
proceedings to review the actions of lower courts." Id. Whether an appellate remedy is
"adequate" so as to preclude mandamus review depends heavily on the circumstances
presented and is better guided by general principles than by simple rules. Id. at 137.

III. Motions to Compel

 We first address the defendants' request that we order the trial court to grant their
fourth motion to compel answers to the Able Supply interrogatory, filed on July 17, 2007,
and their motion to compel answers to the so-called Borg-Warner interrogatory, filed on
September 17, 2007.

 A. Able Supply Interrogatory

 In Able Supply, the Texas Supreme Court clarified the burden which plaintiffs
asserting immature mass-tort claims must meet at the discovery stage of litigation. 898
S.W.2d at 771. "Requiring the plaintiffs to answer an interrogatory linking each plaintiff's
injuries with a particular product will simplify the case, streamline costs to both plaintiffs
and defendants, conserve judicial resources, and aid the trial court in preparing a plan for
the trial of these cases." Id. The defendants claim that the answers provided by both
Garza and the non-trial plaintiffs are insufficient to satisfy this standard.

 In 2007, we held that mass-tort plaintiffs' responses to Able Supply in a similar case
were inadequate and that mandamus relief was appropriate to preclude the trial court from
setting a plaintiff's case for trial in the absence of an adequate such response. In re Van
Waters & Rogers, Inc. (Van Waters III), No. 13-06-00153-CV, 2007 Tex. App. LEXIS 1883,
at *13-18 (Tex. App.-Corpus Christi Mar. 6, 2007, orig. proceeding) (per curiam) (mem.
op.). The plaintiffs in Van Waters III "either answered that (1) no health care provider has
made the required connection between injury and exposure to the defendant's products,
or (2) have answered that a named health care provider has attributed the possibility of
injury to chemicals generally, without specifying a particular product or products." Id. at
*17.

 Here, Dr. Wolfson's report, unlike the plaintiffs' response in Van Waters III, does
attribute the possibility of each plaintiffs' injury to specific chemicals. However, the report
does not provide the defendant-specific causal link required under Able Supply. Dr.
Wolfson's affidavit and chart comprise what is essentially a compendium of epidemiological
studies linking the plaintiffs' symptoms with chemicals that could have caused them. Such
studies cannot, by themselves, establish the actual cause of an individual's injury or
condition. Merrill-Dow Pharms. v. Havner, 953 S.W.2d 706, 715 (Tex. 1997)
("epidemiological studies cannot establish the actual cause of an individual's injury or
condition"). That is because "[e]vidence that a chemical can cause a disease is no
evidence that it probably caused the plaintiff's disease." In re Allied, 227 S.W.3d at 656
(citing Havner, 953 S.W.2d at 714-21) (emphasis in original). Indeed, Dr. Wolfson
expressly stipulates that his opinions "are limited to . . . whether a pesticide is capable of
causing a particular disease, condition or injury . . . and not . . .whether a pesticide, in fact,
caused a plaintiff's disease, condition or injury" (emphasis added). Additionally, the non-trial plaintiffs' responses do not link specific chemicals to specific defendants; this deprives
the defendants of the ability to pinpoint which claims they may reasonably need to defend
against and harms their ability to prepare a viable defense. See id. at 658.

 A comparison with Garza's responses is instructive. In her first supplemental
response, Garza provided the identities of medical experts who have attributed her alleged
injuries to exposure to specific products: "Guadalupe Garza supplements this response
to state that Dr. Frank Gardner and Dr. William Sawyer have attributed her exposure(s) to
toxaphene, dieldrin, DDT and BHC to the Non-Hodgkin's Lymphoma." Moreover, in her
second supplemental response, Garza provided the report by engineer Kaltofen
establishing that the allegedly injury-causing chemicals were produced by specific
defendants to the Hayes-Sammons plant during the time period in question.

 The defendants claim that Garza has still not provided a sufficient Able Supply
response because (1) the reports of Drs. Gardner and Sawyer do not link the allegedly
injury-causing chemicals with specific defendants, and (2) Kaltofen's report does not
provide "a medical determination that an illness has been caused by [a particular]
defendant's product." See Able Supply, 898 S.W.2d at 770. While it is true that the
individual reports themselves may be insufficient, we conclude that when considering the
reports together, Garza has provided an adequate response to the Able Supply
interrogatory. That is because she has properly alleged the causal link between a specific
product or products, produced by specific defendant or defendants, with her specific
injuries. The reports of Drs. Gardner and Sawyer are sufficient to alert the defendants as
to "whether there has been a medical determination that an illness has been caused by
that defendant's product," see id., and Kaltofen's report links each defendant to specific
products provided to the Hayes-Sammons plant. The responses together give each
defendant notice as to which of their chemicals, if any, are alleged to have caused Garza's
injury; it thereby allows each defendant to be able to mount a defense and develop the
merits of the case. The remaining non-trial plaintiffs must be held to this standard.

 We conclude that the non-trial plaintiffs' responses to Able Supply are insufficient
to establish causation, or to give the defendants an opportunity to prepare a viable
defense. See In re Allied Chem. Corp., 227 S.W.3d at 658. Accordingly, the trial court
abused its discretion by failing to grant defendants' fourth motion to compel adequate Able
Supply responses from the non-trial plaintiffs.

 B. "Borg-Warner Interrogatory"

 Defendants additionally claim that the trial court abused its discretion by failing to
rule on their motion to compel answers to the so-called Borg-Warner interrogatory. The
non-trial plaintiffs have not, as of yet, responded to the interrogatory; however, at the trial
court's hearing on October 10, 2007, they conceded that they are required to do so.

 The Borg-Warner court noted the following standard for expert opinions in an
asbestos exposure case:

An opinion on causation should be premised on three preliminary
assessments. First, an expert should analyze whether the disease at issue
can be related to chemical exposure by a biologically plausible theory. 
Second, the expert should examine if the plaintiff was exposed to the
chemical in a manner that can lead to absorption into the body. Third, the
expert should offer an opinion as to whether the dose to which the plaintiff
was exposed is sufficient to cause the disease.


232 S.W.3d at 771 (citing Bernard D. Goldstein & Mary Sue Henifin, Reference Guide
on Toxicology, in Federal Judicial Center, Reference Manual on Scientific Evidence
401, 403 (2d ed. 2000)). The court further held that, in the context of asbestos litigation,
"substantial-factor causation, which separates the speculative from the probable, need not
be reduced to mathematical precision. Defendant-specific evidence relating to the
approximate dose to which the plaintiff was exposed, coupled with evidence that the dose
was a substantial factor in causing the asbestos-related disease, will suffice." Id. at 773. 
Although the mass tort considered here is immature, unlike asbestos litigation, we believe
that the same standard is applicable in this context. The three "preliminary assessments,"
made defendant-specific and including a dosage approximation, would suffice to put the
defendants on notice as to the claims against which they may reasonably need to defend,
and would allow them to prepare a viable defense. See In re Allied, 227 S.W.3d at 658.

 Dr. Wolfson's report, which was the most extensive interrogatory response provided
by the non-trial plaintiffs, is not adequate for this purpose. The report, with its attached
references, provides the first "preliminary assessment" in that it establishes the scientific
possibility that certain chemicals provided by certain specific defendants caused the
injuries complained of by plaintiffs. It does not, however, provide the remaining
assessments because it did not set forth an opinion as to: (1) whether it was possible for
each individual plaintiff to have absorbed the chemicals in an amount sufficient to have
caused the injury; or (2) whether the specific defendants' chemicals did, in fact, cause the
plaintiffs' injuries. (9) Accordingly, Dr. Wolfson's affidavit and chart do not constitute
adequate answers to the Borg-Warner interrogatory. The trial court therefore abused its
discretion in failing to grant defendants' motion to compel such answers from the non-trial
plaintiffs.

 However, Garza's Borg-Warner response provided detailed calculations as to the
approximate doses of each chemical she was exposed to during the time period in
question. Kaltofen's report, which relied on "historical pesticide soil data" to indicate the
precise dosage of each chemical Garza was likely exposed to at her childhood home,
concluded as follows:

I am certain, to within a reasonable degree of toxicological certainty that Ms.
Garza's chronic exposures to DDT, dieldrin, BHCs, and toxaphene released
from Hayes-Sammons significantly contributed to the onset of her NHL. My
review of her historical medical records, direct interview, and inspection of
her 1016 Nicholson Street home failed to provide any other significant
occupational or environmental exposures contributing to the onset of her
NHL.


 Defendants contend that this response is inadequate because it is not defendant-specific; we disagree. Kaltofen's report also contained a list, based on documentary
evidence, identifying which specific manufacturers supplied the named chemicals to the
Hayes-Sammons facility during the time period in question. Kaltofen concluded that
defendants Allied, Syngenta, Zeneca AG, ICI Americas, Maxus, DuPont, Montrose
Chemical, Pharmacia and Velsicol provided DDT; defendant Shell Chemical provided
Dieldrin; defendant PPG Industries provided BHC; and defendant Hercules Inc. provided
Toxaphene to the Hayes-Sammons plant during the time period in question. This
conclusion, taken in combination with Garza's supplemental response providing dosage
approximations for DDT, Dieldrin, BHC, and Toxaphene, provided the three defendant-specific "preliminary assessments" as required under Borg-Warner. See 232 S.W.3d at
771, 773. Accordingly, the trial court did not abuse its discretion in denying defendants'
motion to compel a new Borg-Warner answer from Garza. Because Garza's Able Supply
and Borg-Warner responses were adequate, the trial court did not abuse its discretion by
severing her claims and setting them for trial. (10)

 The responses to the Borg-Warner interrogatory which will be provided by each of
the non-trial plaintiffs must similarly be defendant-specific and show: (1) that the plaintiff's
complained-of injuries can be related to chemical exposure by a biologically plausible
theory; (2) that the plaintiff was exposed to the chemical in a manner that can lead to
absorption into the body; and (3) that the dose to which the plaintiff was exposed is
sufficient to cause the complained-of injury. See id.

 C. Adequate Appellate Remedy

 Having held that the trial court abused its discretion in failing to require the non-trial
plaintiffs to adequately answer the Able Supply and Borg-Warner interrogatories, we now
must consider whether defendants have an adequate appellate remedy in order to
determine whether they are entitled to mandamus relief. See In re Prudential Ins. Co. of
Am., 148 S.W.3d at 135-36.

 A party does not have an adequate remedy by appeal when that party's ability to
present a viable claim or defense is severely compromised or vitiated by the erroneous
discovery ruling to the extent that it is effectively denied the ability to develop the merits of
its case. See Walker, 827 S.W.2d at 843. Plaintiffs have proposed answering the Able
Supply and Borg-Warner interrogatories on a rolling basis, in groups of ten every 45 days. 
At that rate, according to defendants, it would take over 23 years for the more than 1,800
remaining plaintiffs to answer. Defendants ask that we require the trial court to compel
answers "immediately" and raise the specter that, without such an order, 23 years will
elapse without an adequate response.

 Although such a protracted period of litigation is certainly onerous to all parties, the
nature of an immature mass tort is such that neat and expeditious conclusion to all
litigation by all plaintiffs is next to impossible. Furthermore, it is not our province to impose
a strict time-limited discovery mandate analogous to the statutory expert report
requirements imposed upon medical malpractice claimants and asbestos or silica
claimants. See Tex. Civ. Prac. & Rem. Code Ann. §§ 74.351(a), 90.006(a) (Vernon Supp.
2008). Defendants are simply not entitled to "immediate" responses to questions for which
answers may take many years to develop.

 Nevertheless, the trial court may not abate meaningful discovery with respect to any
of the plaintiff's claims. See In re Van Waters & Rogers, Inc. (Van Waters I), 62 S.W.3d
197, 201 (Tex. 2001) (orig. proceeding). That is, plaintiffs are not absolved of the
responsibility to timely provide adequate interrogatory responses merely because their
ranks are numerous. We are concerned that the trial court has failed to set any temporal
guidelines for the production of discovery, particularly in a case involving such a wide array
of claims and claimants. Regardless of the procedural obstacles presented by a case
involving thousands of parties, the defendants are entitled to full, fair discovery within a
reasonable period of time. See Able Supply, 898 S.W.2d at 773.

 We note that the rules of civil procedure require that "a party must make a complete
response, based on all information reasonably available to the responding party or its
attorney at the time the response is made." Tex. R. Civ. P. 193.1; see In re Allied Chem.
Co., 227 S.W.3d at 657. Thus, the plaintiffs are not at liberty to withhold any information
from the defendants if such information is reasonably available. However, to the extent
that the trial court's failure to set appropriate temporal guidelines for discovery in this
matter constitutes an abatement of discovery with respect to the non-trial plaintiffs, it is in
contravention of the supreme court's rulings in Van Waters I, 62 S.W.3d at 201, and In re
Allied Chemical Co., 227 S.W.3d at 657. Such an abatement would deprive the
defendants of an adequate appellate remedy because it would vitiate their ability to
develop the merits of the case. See Walker, 827 S.W.2d at 843; see also Van Waters III,
2007 Tex. App. LEXIS 1883, at *15-16.

 We therefore conditionally grant in part the writ requested in defendants' April 16,
2008 petition and order the trial court to require that all non-trial plaintiffs produce adequate
answers to the Able Supply and Borg-Warner interrogatories within a reasonable time
period as determined by the trial court.

IV. Motions for Summary Judgment

 We next address defendants' request that we compel the trial court to grant their
motions for summary judgment first filed on September 9, 2004.

A. Non-Trial Plaintiffs

 After adequate time for discovery, a party without presenting summary judgment
evidence may move for summary judgment on the ground that there is no evidence of one
or more essential elements of a claim or defense on which an adverse party would have
the burden of proof at trial. Tex. R. Civ. P. 166a(i).

 Defendants, citing In re Prudential, 148 S.W.3d at 135-36, contend that they have
no adequate appellate remedy available to them with respect to the trial court's denial of
their summary judgment motions. However, the defendants do not direct us to any
authority indicating that mandamus relief is appropriate to remedy, specifically, a trial
court's denial of a summary judgment motion.

 Without determining whether mandamus is appropriate in this context, we note that
a trial court errs in granting a no-evidence motion for summary judgment if "adequate time
for discovery" has not elapsed. See Tex. R. Civ. P. 166a(i); Brewer & Pritchard, P.C. v.
Johnson, 167 S.W.3d 460, 469 (Tex. App.-Houston [14th Dist.] 2005, pet. denied); Caso-Bercht v. Striker Indus., 147 S.W.3d 460, 463 (Tex. App.-Corpus Christi 2004, no pet.). 
With respect to the claims of the non-trial plaintiffs, we agree with the defendants that
these plaintiffs have not yet complied with the requirements of Able Supply and Borg-Warner and that they must be required to so comply within a reasonable period of time. 
See Able Supply Co., 898 S.W.2d at 773. However, for the same reason that we will not
impose strict time limits such as those the legislature has imposed on medical malpractice
plaintiffs or asbestos and silica claimants, we cannot say that a reasonable time--or an
"adequate time for discovery"--has yet elapsed in this case with respect to the non-trial
plaintiffs. Accordingly, the trial court's denial of the defendants' motions for summary
judgment was not an abuse of discretion for which no adequate appellate remedy is
available. We deny the defendants' request to compel the trial court to grant their
summary judgment motions as to the non-trial plaintiffs.

B. Garza's Claims

 Insofar as we have determined Garza's Able Supply and Borg-Warner responses
to be adequate, the defendants are not entitled to summary judgment on that particular
plaintiff's claims.

 With respect to defendant Aventis's motion for summary judgment, however, the
record reflects that the trial court has not yet ruled on the motion but, rather, took the
matter under advisement as of December 11, 2007. Aventis asks that we compel the trial
court to grant its motion, noting that Aventis, unlike the other defendants that moved for
summary judgment, was not listed by Kaltofen as having provided any of the named
chemicals to the Hayes-Sammons plant during the time in question. We agree that
Kaltofen's report is critical to Garza's case as to each defendant because it provides, in
combination with the report detailing the estimated dosage of each chemical that Garza
was exposed to, the essential defendant-specific causal link between chemicals produced
and Garza's injuries. Aventis's absence from Kaltofen's list indicates that Garza has not
yet met her pre-trial burden under Borg-Warner with respect to that defendant. Moreover,
because trial in that cause is scheduled for June 15, 2009, Garza's failure to date to meet
that burden jeopardizes her claims against Aventis. See In re Allied, 227 S.W.3d at 655
(a trial judge cannot postpone responses to basic discovery until shortly before trial), 658
(allowing discovery to continue to thirty days before trial amounts to a denial of discovery
going to the very heart of the case).

 Because the trial court has not yet ruled on Aventis's motion for summary judgment,
we will not direct a particular judgment. However, a trial court's failure to rule on a matter
may be deemed an abuse of discretion subject to mandamus relief if the petitioner shows
that the trial court: (1) had a legal duty to rule; (2) was asked to rule; and (3) failed or
refused to do so. In re Dimas, 88 S.W.3d 349, 351 (Tex. App.-San Antonio 2002, orig.
proceeding); In re Chavez, 62 S.W.3d 225, 228 (Tex. App.-Amarillo 2001, orig.
proceeding); Barnes v. State, 832 S.W.2d 424, 426 (Tex. App.-Houston [1st Dist.] 1992,
orig. proceeding). A trial court has a reasonable time to perform the ministerial duty of
considering and ruling on a matter properly filed and before the court. In re Chavez, 62
S.W.3d at 228; Barnes, 832 S.W.2d at 426. Whether the judge has acted within a
"reasonable" period of time depends on the circumstances of the case. In re Chavez, 62
S.W.3d at 228 ("No bright-line demarcates the boundaries of a reasonable time period.").

 Here, Aventis filed its motion for summary judgment on March 3, 2005; the trial court
heard evidence thereon and took the matter under advisement on December 11, 2007. 
We believe that the trial court has had ample time to review the merits of the motion as it
relates to Garza's claims, especially considering the impending trial date of June 15, 2009. 
We conclude that the trial court abused its discretion by failing to rule on Aventis's no-evidence motion for summary judgment on Garza's claims, and we direct the trial court to
so rule.

VI. Conclusion

 We conditionally grant the writ of mandamus requested in appellate cause number
13-08-00206-CV in part, and direct the trial court to grant defendants' fourth motion to
compel in part by requiring all plaintiffs in trial court cause number C-4885-99-F to provide
adequate answers to the Able Supply and Borg-Warner interrogatories within a reasonable
time period as determined by the trial court. Further, we conditionally grant the writ of
mandamus requested in appellate cause number 13-08-00678-CV in part, and direct the
trial court to rule on defendant Aventis's motion for summary judgment in trial court cause
number C-4885-99-F(10). 

 The writs will issue only if the trial court fails to comply. The petitions for writ of
mandamus filed in appellate cause numbers 13-08-00206-CV and 13-08-00678-CV are
denied in all other respects.


 DORI CONTRERAS GARZA,

 Justice


Opinion delivered and filed 

this the 27th day of January, 2009.


1. Appellate cause number 13-08-00206-CV.
2. For ease of reference, the relators in the instant case will be referred to as "defendants," while the
real parties in interest will be referred to as "plaintiffs."
3. Appellate cause number 13-08-00678-CV.
4. Plaintiffs' initial responses to the master set of interrogatories are not contained in the record before
us.
5. According to defendants, the plaintiffs had previously objected to Interrogatories 15, 16, 17 and 20
as "overly broad, harassing, unduly burdensome, seek[ing] information that is neither relevant nor likely [to]
lead to the discovery of admissible evidence and ... constitute[] an impermissible fishing expedition."
6. The response stipulated that the total dose levels were "[u]nderestimated value[s]" because of
"unavailable inhalation data [and] oral fruit and vegetable ingestion [data]" and that "household dust dermal
absorption" was not included in the figures.
7. Garza's case against 14 defendants was set for trial on October 20, 2008. On March 20, 2008, the
trial setting was vacated at the plaintiffs' request. Trial on Garza's claims was later reset to June 15, 2009.
8. On February 6, 2008, defendant Maxus withdrew its motion for summary judgment.
9. The1,848-page chart attached to Dr. Wolfson's affidavit similarly fails to adequately answer the Borg-Warner interrogatory, because (1) it does not purport to make allegations as to specific causation, and (2) it
is not defendant-specific.
10. Defendants claim that the supreme court's opinion in In re Allied Chem. Corp, 227 S.W.3d 652, 659
(Tex. 2007) (orig. proceeding), requires that all plaintiffs file adequate Able Supply responses prior to any
plaintiff's claims being set for trial, pointing to Justice Brister's statement at the conclusion of the opinion that
"we direct the trial court to vacate its order setting any of the plaintiffs' claims for trial until the defendants have
a reasonable opportunity to prepare for trial after learning who will connect their products to plaintiffs' injuries." 
Id.


 It is clear to this Court, however, that the statement merely means that each individual plaintiff's claims
may not be set for trial until that individual plaintiff has provided sufficient information linking defendants'
products to his or her injuries. The alternative interpretation advocated by defendants implies that the
supreme court intended to foreclose trial against any plaintiff unless and until the defendants have a
"reasonable opportunity to prepare for trial" against all of the hundreds of plaintiffs, a conclusion that we
cannot countenance.


 Moreover, we do not believe that the supreme court intended to abrogate or limit the trial court's
discretion to sever a claim or to order a separate trial of any claim in furtherance of convenience. See Tex.
R. Civ. P. 41 ("Any claim against a party may be severed and proceeded with separately."), 174(b) ("The court
in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim,
counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims,
counterclaims, third-party claims, or issues.").