# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-IA-00174-SCT

*JANSSEN PHARMACEUTICA, INC., JOHNSON & JOHNSON AND YOSHINOBU NAMIHIRA, M.D.*

*v.*

*BERTHA GRANT, ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/10/2003 |
| TRIAL JUDGE: | HON. ROBERT G. EVANS |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DONNA BROWN JACOBS |
| | CHRISTY D. JONES |
| | JOHN C. HENEGAN |
| | ROBERT L. JOHNSON, III |
| | CLIFFORD C. WHITNEY, III |
| | R. E. PARKER, JR. |
| ATTORNEYS FOR APPELLEES: | JAMES W. NOBLES, JR. |
| | ANGELO JOHN DORIZAS |
| | EUGENE COURSEY TULLOS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | REVERSED AND REMANDED - 05/13/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE SMITH, C.J., COBB, P.J.,  AND CARLSON, J.

### CARLSON, JUSTICE, FOR THE COURT:

¶1.     Bertha Grant and three other Mississippi plaintiffs, Sarah Rebecca Garner, Tony Keen, and Daisy

James ("Plaintiffs"), filed suit in the Smith County Circuit Court alleging injuries they claimed were caused

by the prescription medication, Propulsid. The suit was filed against the New Jersey-based manufacturer

Janssen Pharmaceutica, Inc.; its New Jersey-based corporate parent Johnson & Johnson; a Mississippi

physician from Warren County, Dr. Yoshinobu Namihira; and a pharmaceutical salesperson from Rankin County, Eric Norsworthy. Only Grant is a resident of Smith County. Garner is a resident of Scott County, and Keen and James are residents of Warren County. Also Keen and James, the two Warren County residents, were the only two plaintiffs who were patients of Dr. Namihira, who is also a resident of Warren County. The plaintiffs sought to hold the defendants jointly and severally liable to each plaintiff for compensatory and punitive damages.

¶2.     On November 1, 2002, Janssen and Johnson & Johnson filed a Motion to Sever and Transfer Venue for Separate Trials, arguing that joinder was improper under Miss. R. Civ. P. 20 and that venue was improper in Smith County. The trial court denied the motion as well as Janssen's and Johnson & Johnson's ore tenus motion for certification of interlocutory appeal. On April 3, 2003, this Court granted Janssen's and Johnson & Johnson's Petition for Interlocutory Appeal by Permission Pursuant to M.R.A.P. 5(a). Finding that joinder was improper and that the trial court abused its discretion in denying the motion to sever and transfer, we reverse the trial court's judgment and remand this case for severance and for a transfer of the severed cases to those jurisdictions in which each plaintiff could have brought his or her claims without reliance on another of the improperly joined plaintiffs.

## FACTS[1]

¶3.     Propulsid is a prescription medication manufactured by Janssen Pharmaceutica, Inc., used to treat gastroesophageal reflux disease (GERD). The Food and Drug Administration (FDA) approved Propulsid for sale in the United States in July 1993, after 12 years of research and clinical testing and more than five years of use in Europe by millions of patients. The 1993 package insert noted that there had been rare

---

[1]These facts are taken verbatim from *Janssen Pharmaceutica, Inc. v. Armond*, 866 So. 2d 1092, 1095 (Miss. 2004).

2

reports of tachycardia (rapid heartbeats) in patients taking Propulsid, but no incidents involving serious injury or death. In late 1994, Janssen received two reports of patients who experienced a potentially fatal heart arrhythmia known as "torsades de pointes." These patients were also taking the drug ketoconazole, an antifungal medication. After a drug interaction study was performed, a new package insert was issued in February 1995, warning against taking Propulsid with this and other medications. During the seven years after FDA approval for sale in the U.S., the package insert for Propulsid was revised five times: in February 1995, October 1995, June 1998, May 1999 and January 2000. Along with the new package inserts, Janssen sent hundreds of thousands of "Dear Doctor" letters to inform physicians and pharmacists of the revised safety information. During the period from 1993 to 2000, there were reports of about 300 cardiac events among the approximately ten million patients given Propulsid in the United States. Due to the potential seriousness of such an event, Janssen decided to make Propulsid available only through an investigational limited access program in May 2000. Janssen claims that this decision to withdraw Propulsid from commercial distribution has sparked thousands of claims across the country that Propulsid has caused all manner of injuries.

## ANALYSIS

¶4.     On February 19, 2004, this Court decided ***Janssen Pharmaceutica, Inc. v. Armond***, 866 So. 2d 1092 (Miss. 2004).  As in ***Armond***, today's case is a products liability suit based on the adequacy of warnings which accompanied the medication, Propulsid. ***Armond*** controls the disposition of all issues raised in the case sub judice. In ***Armond*** we determined that joinder was improper and that the trial court abused its discretion in denying the motion to sever and transfer. Therefore, we reach the same conclusion here.

## CONCLUSION

¶5. For these reasons, we reverse the trial court's judgment and remand this case for severance and for a transfer of the severed cases to those jurisdictions in which each plaintiff could have brought his or her claims without reliance on another of the improperly joined plaintiffs.

¶6. **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., AND GRAVES, J., CONCUR. DICKINSON, J., CONCURS WITH SEPARATE WRITTEN OPINION. EASLEY, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

**DICKINSON, JUSTICE, CONCURRING:**

¶7. I fully concur with the majority in this case. I write separately only to point out that I see no justification for carving out an exception to the application of Rule 20 of the Mississippi Rules of Civil Procedure for "mature torts," or in other words, asbestos cases. Rule 20 should apply equally to all torts, whether mature or immature.

¶8. Therefore, I do not believe we were correct in *Armond* when we implied that plaintiffs bringing asbestos claims may ignore the requirements of Rule 20 of the Mississippi Rules of Civil Procedure.

**EASLEY, JUSTICE, DISSENTING:**

¶9. I dissent from the majority's ruling today. The majority's decision follows on the heels of our recent decision, *Janssen Pharmaceutica, Inc. v. Armond*, 866 So.2d 1092 (Miss. 2004), in which I joined Justice Graves's specially concurring opinion.

¶10. In *Armond*, Justice Graves advocated the adoption of a class action rule instead of relying upon Rule 20. In this case, as well as *Armond*, the majority provides little guidance in this new course of proceeding. The majority is quick to hold that the Propulsid claims do not arise out of the same transaction or occurrence, thus failing to meet the requirements of Rule 20. However, litigants, their lawyers, and the

4

trial courts are left without a clue as to how to proceed in cases. *Armond* was reversed and remanded because the claims did not arise out of the same transactions or occurrence and their joinder prejudiced the defendants. *Id.* at 1095 (¶7). Specifically, the Court reversed the trial court ruling and remanded the case for severance of any defendant with no connection to Armond, including doctors that did not prescribe Propulsid to Armond. *Id*.

¶11.    The Court in *Armond* referred to "mature" and "immature" torts. *Id*. at 1099 (¶¶ 25-26). Asbestos suits which have been present for "decades" are considered a "mature" tort and thus more amenable to aggregation. *Id*. at (¶ 25). On the other hand, in *Armond*, this Court classified Propulsid claims as "immature" torts since "scientific, legal, and factual issues related to "immature torts" are novel and unsettled." *Id*. at (¶26). Mass joinder is not considered to be appropriate until there have been enough trials and the "contours" of different claims are more readily known in the litigation. *Id*. (citing *In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 603 (Tex. 1998)).

¶12.    The Court's holding in *Armond* and today's decision in the case sub judice leave a number of unanswered questions. First, when does an immature tort mature? Even if it becomes a "mature" tort will the law have then so evolved as to make it impractical to return this tort to the realm of Rule 20 joinder? Second, is the proper course for the legal system simply to venture down the path of forcing multiple cases into multiple counties? Are we not creating yet another problem with numerous separate filings all over the state and potential back logs in the trial courts by not allowing joinder in certain cases? Are we subjecting defendants to increased costs in defending numerous lawsuits filed in various locations? The taxpayers will ultimately bear the burden of the increased litigation and increased filings in our court system. The court system will become rapidly clogged with yet more cases slowing the legal process further and increasing

5

the burden on court staff and further straining the limited budget of our court system. Thirdly, where does a litigant stand in future cases, especially if his individual claim is relatively small, and therefore the economics of the matter would deter cases and deprive litigants of any recourse.

¶13.    As this decision leaves too many questions unanswered, I must respectfully dissent. M.R.C.P. 20 is intended to streamline cases and promote judicial economy. *Armond* and this case create further problems which will ultimately impact Mississippi by clogging our court systems, strain our judicial staff and resources, and place an added cost burden on the taxpayer by increasing the litigation and subsequent court costs. In my opinion, this Court needs to take a more thorough look at this troubling situation, consider setting up a special committee to address the situation and seriously consider and investigate the alternative of implementing class actions in Mississippi, possibly following the federal court model set out in F.R.C.P. 23.