**Opinion filed August 21, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-25-00052-CV

_____

## IN RE MBC ENERGY SERVICES, INC. AND ROBERT DOUGLAS WOODS, JR.

### Original Mandamus Proceeding

## M E M O R A N D U M   O P I N I O N

This mandamus proceeding concerns the efforts by Relators, the defendants in the proceeding below, to obtain funding information from the plaintiff and his medical providers for the plaintiff's medical care. Relators MBC Energy Services, Inc. and Robert Douglas Woods, Jr. state their first issue[1] as follows:

> Did the trial court clearly abuse its discretion in denying discovery concerning the amounts the Treaters were paid by the Funders for the medical services they provided to [Daniel] Sunde and the relationship between the Treaters, the Funders, and Sunde's

---

[1]Relators assert in their second issue that they lack an adequate appellate remedy.

lawyers, which is relevant to the reasonableness of medical expenses and the Treaters' bias?

Relators complain that the trial court abused its discretion in two respects: 1) when it refused to grant their motion to compel the depositions of several witnesses that Relators describe as "Funders and Treaters," and 2) when it denied Relators' motion to compel with respect to various interrogatories and requests for production of documents to which the real party in interest, Daniel Sunde, objected. In a global order, the trial court denied Relators motion to compel without addressing the specific complaints raised in the motion. Because we conclude that the trial court abused its discretion by denying Relators' motion to compel, we conditionally grant mandamus relief.

*Factual and Procedural Background*

Sunde brought suit against Relators alleging that, on April 6, 2023, he was injured in a motor vehicle accident that was caused by their negligence. Specifically, Sunde alleged that he was a passenger in a motor vehicle that was struck by Woods, who was acting in the course and scope of his employment with MBC. After Sunde filed suit, Diuber Reyes Perez and Raymond Smith intervened in the lawsuit, alleging that they were likewise injured in the same accident.

The discovery that is sought by Relators concerns the relationship between Sunde's attorneys, several of Sunde's medical providers, and three companies: Access Healthcare Management, Elite Medical Care, and CareCapital, LLC. Relators allege that the parties have established a series of funding "arrangements" that operate to artificially inflate Sunde's claimed medical expenses.

The first alleged funding arrangement involves Dr. Gassan Chaiban and Allied Health, a clinic that is affiliated with Dr. Chaiban. Allied Health is located in Lake Charles, Louisiana. There is evidence that Sunde was referred to Allied Health and Dr. Chaiban through Sunde's attorneys. Chaiban's records list Access as

2

Sunde's "insurance company." However, on its website, Access purports to be a company that provides "medical lien funding to help medical providers increase cash flow and eliminate financial risks while treating personal injury patients." Access claims to do this by "purchas[ing] accounts receivables from physicians" and assisting the medical provider by providing "patient management[] and law firm communications." There is also evidence from an expert retained by counsel for Relators demonstrating that Allied's billing is substantially higher "compared to what providers typically receive . . . for similar services."

The second alleged funding arrangement involves Dr. Mohammed (M.K.) Hazma, who is a neuropsychologist at The Neurobehavioral Clinic in Port Neches. Relators allege that a company known as Elite Medical Care "funded" Sunde's visit to Dr. Hazma, and then billed Sunde for his services, pointing to a medical billing affidavit executed by Mayra Zuniga. However, the affidavit in question merely indicates that Elite was billing for Dr. Hazma's services. It does not show that Elite "funded" the visit to Dr. Hazma.

The third alleged arrangement involves Dr. Gina Armstrong of the Texas Brain Center and Dr. Ramiro Hernandez of River Oaks Hospital & Clinics (formerly AD Hospital East LLC). Both of these entities are based in Houston. CareCapital claims that it serves as a "administrative billings-and-collections agent" for each of these providers. However, Relators maintain that this contention does not fully disclose the entirety of the relationship between CareCapital, the providers in question, and Sunde's attorneys.

The record contains evidence that supports a referral relationship between Access, Sunde's attorneys, and the providers that operate within the Access network and/or the networks of Access subsidiaries. In November 2023, for example, Dr. Patrick Hayes, a psychiatrist, gave testimony about the relationships among

3

these entities in a multiparty lawsuit arising out of Hurricane Zeta. Dr. Hayes testified that he does not have a relationship with the attorneys that represent Sunde in this lawsuit. However, he does have a relationship with Access, which serves as a "clinical case manager." Furthermore, it is Dr. Hayes's understanding that, when a case arises that falls into Dr. Hayes's areas of practice, Access in turn refers the patients to Dr. Hayes. Dr. Hayes's office then bills Access for its services in accordance with an established fee schedule, and Access pays for the services, but also receives a "contracted rate" for its management services.

Similarly, in March of 2024, Stephanie Garcia, appearing as a corporate representative of CareCapital, appeared for a deposition in an unrelated personal injury lawsuit then pending in Harris County. In her deposition, Garcia testified that, as a part of its business practices, CareCapital enters into arrangements with medical providers to purchase their accounts receivable at a discounted rate, anticipating that it will recover the full amounts of the receivables once the case is resolved through settlement or an award at trial.

Relators assert that the amounts the providers are "willing to accept for their medical services through the sale of their accounts receivable is—at a minimum—relevant to determining the reasonable cost of the medical services Sunde received." Additionally, Relators argue that evidence of the relationship between these parties demonstrates bias because the arrangement "ultimately incentivizes the [providers] to render the most severe diagnoses, recommend more expensive treatment, and inflate medical bills," which in turn motivates the funding companies to "continue to feed them more patients."

On September 8, 2023, the trial court signed an Agreed Discovery Control Plan and Scheduling Order that set a deadline of April 22, 2024 for Sunde and the intervenors to disclose expert witnesses. The scheduling order also established a

4

discovery deadline of July 8, 2024. Thereafter, on March 26, 2024, the trial court signed an Agreed Amended Docket Control Order, which among other things, extended the deadline for the disclosure of Sunde's and intervenors' expert witnesses until June 28, 2024 and a deadline for discovery until August 23, 2024.

On June 28, 2024, Sunde responded to a set of interrogatories and requests for production that were served on him by Woods. The interrogatories and requests for production included several inquiries into the arrangements between Sunde and his medical providers regarding the payment of Sunde's medical bills. For example, in Interrogatory No. 6, Woods sought the following from Sunde: "Identify, by name, address, and contact information, all medical and mental health providers that have provided you with medical services or equipment related to the Incident under a letter of protection or any form of deferred compensation agreement, whether written or oral." Sunde provided the following response:

> Plaintiff objects to this request on the basis it is overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects to the extent this request is irrelevant and constitutes a fishing expedition. Subject to the foregoing objections, there are no letters of protection and Plaintiff is unaware of any agreements.

Interrogatory No. 7 sought the identity of "all persons or entities providing any funding or financing for your medical services or equipment in relation to the Lawsuit." Sunde made the same objections to this interrogatory followed by the statement "[n]one at this time." Sunde made similar objections to requests for production seeking the same type of funding information.

Although Sunde objected to most of these requests on several grounds, he also provided answers and/or responses that were subject to his objections. Sunde's answers denied the existence of any specific financial arrangements, such as letters

of protection or "factoring," but it is unclear as to whether the qualified nature of his answers limits the scope of information that Sunde is providing.

On July 23, 2024, counsel for Sunde transmitted to Relators a series of documents that included records for Dr. Ramiro Hernandez, River Oaks Hospital, Texas Brain Center, and Dr. Gina M. Armstrong. Thereafter, on August 8, 2024, the trial court signed a Second Agreed Amended Docket Control Order, which extended the deadline for plaintiffs to disclose experts until August 28, 2024, and extended the discovery deadline until November 15, 2024. Among other things, the order specifically provided that "[a]ll . . . depositions must be completed by [November 15, 2024]."

Sunde filed his designation of experts on August 28, 2024, the deadline date for the designation of experts. In it, he designated "retained experts" and "non-retained experts." Included within the non-retained experts were "physicians and medical facilities [that] have knowledge of Plaintiff's injuries and medical treatment." He further indicated that they may testify about "reasonable costs for medical care in the past and future, and the need, if any, for future treatment."

On August 29, a paralegal employed by counsel for Relators inquired about dates for the depositions of "the plaintiffs' retained experts." Counsel for Relators then followed up with a second communication on August 30 again asking for dates for the depositions. Later on the same date, counsel for Sunde responded to the e-mail, stating that "[w]e'll get dates for [plaintiffs' retained experts] after the party depos are complete." Counsel for Relators then responded that the parties should not delay in setting dates "since it generally takes weeks or months to get expert depositions scheduled." In reply, counsel for Sunde indicated that "the dates won't be in September," but did not provide any available dates beyond September.

On September 16, 2024, counsel for Sunde transmitted to Relators a series of records that included the billing records of Elite Medical Care. Sunde claims that other records for Elite Medical Care had been previously produced on May 22, 2024. In support of this claim, Sunde points to an e-mail that his counsel transmitted to counsel for Relators on May 22, which includes a link to document production from Sunde. The e-mail contains the names of several digital files that were produced at the time.

Sunde contends that the records that were produced on September 16 also indicated that Dr. Nadia Ramsey was the owner of Elite Medical Care and that Mayra Zuniga was the custodian of records of Elite Medical Care. However, the record only includes the names of the digital files that were produced. It does not include the contents of the document production itself.[2]

On the same date, counsel for Relators again attempted to solicit dates for medical expert depositions of Allied Health, Access Healthcare Management, and a medical doctor. Counsel for Sunde again responded that "[a]ny depositions of medical/experts will occur after party depositions are complete." In the same e-mail, counsel for Sunde stated that she was "booked most of the rest of the year, so it would not be helpful to provide you dates I'm not available."

It appears that, in early October, counsel for Relators again attempted to schedule depositions. In an e-mail dated October 18, counsel indicated that, based on his firm's inquiries, only five dates were available "between now and

---

[2]Counsel for Sunde states that this court can examine the contents of hyperlinks contained within the record that point to copies of the documents on the internet. We decline to undertake such an examination. Such documents have not been made part of the record before us, and there is likewise no indication that they were before the trial court when it considered the motion to compel. *See In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 605 (Tex. 1998) (orig. proceeding) (When making a determination as to whether mandamus should issue, the supreme court "must focus on the record that was before the [trial] court."); *see also In re Allstate Ins. Co.*, 232 S.W.3d 340, 343 (Tex. App.—Tyler 2007, orig. proceeding) ("[O]ur review is limited to the record as it existed before the trial court at the time of the decision.").

November 15." In the same e-mail, he listed over twenty deposition requests that had been made by various parties to the lawsuit. He then inquired about whether a continuance of the February 2, 2025 trial setting would be opposed. However, according to counsel for Relators, no response was made to those inquiries.

On October 22, 2024, Relators issued a series of notices announcing their intention to take the depositions of Armstrong, Hernandez, The Texas Brain Center, and AD Hospital.

Three days later, Sunde moved to quash those depositions on the grounds that "[d]efendant unilaterally served the deposition notices," and stated that his counsel was unavailable. As a result of the motion to quash, all of the depositions were automatically stayed. *See* TEX. R. CIV. P. 199.4.

On November 5, Relators noticed the depositions of Elite Medical Care, Ramsey, and Zuniga. These depositions were scheduled to proceed on November 15, the same day that the discovery period was set to expire. Three days later, the parties whose depositions had been requested moved to quash their notices, indicating that they were unavailable. Consequently, those depositions were likewise automatically stayed. *See id*.

On November 15, Relators filed the motion to compel that is the subject of this mandamus action, together with a verified motion for continuance. In their motion, Relators sought an order compelling the depositions of Elite Medical Care, Ramsey, Zuniga, River Oaks Hospital, The Texas Brain Center, Armstrong, and Hernandez. Additionally, the motion asked the court to compel Sunde to "remove all objections and provide all information and documents responsive" to six of Relators' interrogatories and ten of its requests for production.

The trial court heard Relators' motion to compel and motion for continuance on December 12, 2024. The trial court by written order denied the motion to compel

8

on December 18, 2024. On the same day, the trial court granted the motion for continuance and reset the trial for March 31, 2025. On March 10, 2025, Relators filed a petition for writ of mandamus complaining about the trial court's rulings on the motion to compel.

*Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). A writ of mandamus will issue only if the trial court clearly abused its discretion, and the relator has no adequate remedy on appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). With respect to the first requirement, a trial court abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). In addition, because a trial court has no discretion in determining what the law is or in applying it to the facts, a trial court abuses its discretion if it fails to correctly analyze or apply the law. *See Prudential*, 148 S.W.3d at 135; *see also In re J.B. Hunt Transp., Inc.*, 492 S.W.3d 287, 294 (Tex. 2016) (orig. proceeding).

The rule is clear: before parties bring a discovery-related matter to the trial court's attention, they are required to confer in an effort to resolve the disputed issues. TEX. R. CIV. P. 191.2. "This requirement should not be ignored, nor should it be observed in a pro forma fashion." *In re Scherer*, 684 S.W.3d 875, 882 (Tex. App.—Eastland 2024, orig. proceeding). When conferring, counsel for the parties are under a duty to cooperate and to "make any agreements reasonably necessary for the efficient disposition of the case." TEX. R. CIV. P. 191.2. Such agreements accomplish a full and fair adjudication of the litigant's rights, serving the overall purposes of discovery. *See Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996).

We observe that in this proceeding, it does not appear that the parties have engaged in a good-faith effort to satisfy their duties to effectuate the mandates of the trial court's discovery control plan in a timely manner or to confer in good-faith in an effort to resolve any problems relating to the scheduling and timely completion of discovery.

*Laches*

Before reaching the merits of the petition, we address Sunde's argument that the petition should be dismissed as a result of the Relators' delay in seeking mandamus.

Mandamus is not an equitable remedy. *Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993). However, its issuance is largely controlled by equitable principles. *Id.* "One such principle is that '[e]quity aids the diligent and not those who slumber on their rights.'" *Id.* (quoting *Callahan v. Giles*, 155 S.W.2d 793, 795 (Tex. 1941); *see also In re Rino-K&K Compression, Inc.*, 656 S.W.3d 153, 161 (Tex. App.—Eastland 2022, orig. proceeding). As such, a party may waive its right to mandamus relief where it "unduly or unreasonably delays filing a petition for mandamus relief . . . unless the delay is justified." *In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding). This waiver can be characterized as an application of the equitable doctrine of laches. *See, e.g., In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010) (orig. proceeding). However, in addition to demonstrating unreasonable delay, the party seeking to invoke the doctrine of laches must demonstrate its own good faith, as well as a "detrimental change in position because of the delay." *Id.*; *see also In re Smith*, No. 11-03-00409-CV, 2004 WL 308664, at *1 (Tex. App.—Eastland Feb. 19, 2004, orig. proceeding) (mem. op.).

"Laches is a question of fact that should be determined by considering all of the circumstances in each particular case." *In re Mabray*, 355 S.W.3d 16, 22–23

10

(Tex. App.—Houston [1st Dist.] 2010, orig. proceeding); *see also In re MAF Indus., Inc.*, No. 13-20-00255-CV, 2020 WL 6158248, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 19, 2020, orig. proceeding) (mem. op.).

Under ordinary circumstances, where there is no evidence that would justify urgency, a delay of three months or less is not unreasonable. *See In re Laibe*, 307 S.W.3d at 318 ("A two-month delay in seeking mandamus relief is not necessarily unreasonable."); *In re Cypress Tex. Lloyds*, 437 S.W.3d 1, 6 (Tex. App.—Corpus Christi–Edinburg 2011, orig. proceeding) (A delay of almost three months was not unreasonable.); *In re Jones*, No. 12-19-00354-CV, 2019 WL 7373848, at *7 (Tex. App.—Tyler Dec. 31, 2019, orig. proceeding) (mem. op.) (holding that a delay of almost three months did not support laches, and noting that, according to the relators, the case below was abated and no trial date was set); *see also In re SCI Tex. Funeral Servs., Inc.*, 236 S.W.3d 759, 761 (Tex. 2007) (orig. proceeding) (The court of appeals erred when it denied mandamus based on six-month delay where movant "explained the delay by establishing that it took three months to get the reporter's record.").

Furthermore, delays of even longer periods of time may be reasonable when the movant offers an adequate justification. *In re MAF*, 2020 WL 6158248, at *2 (A delay of almost four months was not unreasonable in light of the ongoing COVID-19 pandemic and the imminent release of important controlling authority.).

In this case, Relators delayed for approximately eighty-two days in seeking mandamus. This delay of less than three months is well within the range of delays that are generally considered to be reasonable.

We note that, in situations where a trial on the merits is imminent, Texas courts will sometimes examine shorter periods of delay with greater scrutiny. *See, e.g., Int'l Awards, Inc. v. Medina*, 900 S.W.2d 934, 935 (Tex. App.—Amarillo 1995,

no writ) (after four-month delay, petition was filed six days before trial); *Bailey v. Baker*, 696 S.W.2d 255, 256 (Tex. App.—Houston [14th Dist.] 1985, no writ) (after a delay of almost four months, petition was filed seventeen days before trial); *In re Auto Club Cnty. Mut. Ins. Co.*, No. 05-24-00960-CV, 2024 WL 4223702, at *1 (Tex. App.—Dallas Sept. 18, 2024, orig. proceeding) (mem. op.) (applying laches where "relators filed their mandamus petition almost three-and-a-half months after the trial judge signed the challenged order and less than six weeks before the scheduled trial date"). However, in this case, it is unlikely that any mandamus action could have been resolved prior to the March 31 trial setting, even if Relators had sought mandamus at an earlier date. As such, we conclude that the delay did not create a detrimental change with respect to Sunde's ability to proceed to trial. *See In re Laibe*, 307 S.W.3d at 318.[3]

Relators offer a number of explanations for the amount of time that elapsed while they prepared their mandamus petition. Our holding on this issue is based solely on a determination that this mandamus action was filed within a period of time that is generally considered to be acceptable for the purpose of avoiding a dismissal based on laches. We do not address the question of whether Relators' explanations would be reasonable under other circumstances. Therefore, we conclude that eighty-two days was not an unreasonable period for Relators to seek mandamus under the circumstances of this case.

---

[3]It is possible Relators' delays in issuing the discovery requests at issue, combined with their delay in seeking mandamus, may have created an unnecessary delay in the proceedings. However, we assess the reasonableness of the delay in filing a writ of mandamus based on the date the order that is the subject of mandamus was issued, "not the issue that precipitated the request." *In re Episcopal Sch. of Dallas, Inc.*, 556 S.W.3d 347, 360 (Tex. App.—Dallas 2017, orig. proceeding).

*General Relevancy of the Requested Discovery*

As summarized in *In re Central Oregon Truck Co.*:

> In *K&L Auto*, . . . we held that information about the billing practices of medical providers is relevant and, with properly tailored requests, discoverable in a personal-injury suit. As we explained there, medical-billing information may bear on the reasonableness of the amount charged, and reasonableness is an established limitation on the recoverability of medical expenses as damages.

644 S.W.3d 668, 669 (Tex. 2022) (orig. proceeding) (citing *In re K&L Auto Crushers, LLC*, 627 S.W.3d 239, 244–45, 250 (Tex. 2021) (orig. proceeding)). In *K & L Auto*, the court held that in a personal injury action, the lower negotiated rates that health care providers charge to private insurers and public payors is relevant to whether the higher "chargemaster" rates for which they billed the claimant were reasonable. 627 S.W.3d at 250–51. Further, the court in *K & L Auto* noted that:

> Our procedural rules govern the scope of permissible discovery. Generally, the rules broadly permit discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). This includes information that "will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* Because the purpose of discovery is to enable courts to decide disputes based on "what the facts reveal, not by what facts are concealed," the rules must be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial."

*Id.* at 247–48 (internal citations omitted).

Relators contend that the trial court should have granted the motion to compel with respect to the requested discovery because it is relevant to the issue of what the providers in question "ultimately receive[d] for their services—not just what they bill[ed]—for the purpose of determining the amounts actually 'paid or incurred' and the reasonable value of the medical services provided." In light of the supreme court

13

precedent cited above, we conclude that the requested discovery concerning funding information was both relevant and generally discoverable.

*The Written Discovery*

Relators' motion to compel[4] asked the trial court to require Sunde to "remove all objections" to its interrogatories and requests for production inquiring about financial arrangements involved in the payment of Sunde's medical expenses, and to compel plaintiff to "provide all information and documents responsive" to such requests.

Rule 193.4 of the Texas Rules of Civil Procedure allows a party to "request a hearing on an objection" to written discovery. TEX. R. CIV. P. 193.4(a). When a party seeks a ruling on an opponent's objections to written discovery, its arguments should focus on each individual request and objection, as opposed to more generalized arguments that seek to strike an entire set of discovery requests. *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding); *In re CAR Fin. Services, Inc.*, No. 02-20-00157-CV, 2020 WL 4213839, at *6 (Tex. App.— Fort Worth July 23, 2020, orig. proceeding) (mem. op.).

In this case, "neither party has presented argument—here or in the trial court—specific to each request." *See CAR Fin.*, 2020 WL 4213839, at *6. Instead, the parties generally address the relevance of Relators' interrogatories and requests for production seeking information about the financial arrangements between Sunde and his medical providers. *See In re Gen. Motors Corp.*, No. 12-07-00387-CV, 2008 WL 541679, at *4 (Tex. App.—Tyler Feb. 29, 2008, orig. proceeding) ("As in *American Optical*, the parties here presented general arguments regarding the proper

_____

[4]We note that with its exhibits, Relators' motion to compel was in excess of 1,100 pages.

scope of discovery, but did not specifically focus on each individual discovery request.")

Additionally, the trial court did not rule on each of Sunde's objections, but instead signed a global order that states: "IT IS THEREFORE ORDERED that [Relators'] Joint Motion to Compel Discovery is DENIED." This order from the trial court covers approximately six interrogatories and ten requests for production. Sunde lodged approximately four objections to each of these interrogatories and nine of the ten requests for production. Thus, the trial court's order denying Relators' motion to compel addresses approximately sixty objections with a single sentence. Under these circumstances, it does not appear that the trial court considered each of Sunde's objections individually, as it should. *See CAR Fin.*, 2020 WL 4213839, at *6. (conditionally granting mandamus relief and ordering the trial court to reconsider a discovery ruling that did not individually address discovery objections). As such, the trial court abused its discretion when it failed to individually consider and rule on each of Sunde's objections. *See id.* In this regard, it is more appropriate for the trial court to address each objection first on a request-by-request and objection-by-objection basis rather than for this court to attempt to address each of them in this original proceeding. *See id.*

*Requested Depositions*

Relators also contend that the trial court should have granted the motion to compel with respect to the depositions in question because they are relevant to the issue of what the providers in question "ultimately receive[d] for their services." In response, Sunde argues, in part, that the motion to compel was properly denied based solely on Relators' failure to timely pursue the depositions at issue.

In Texas, all cases are governed by discovery control plans that are based on the contents of the plaintiff's initial pleadings. TEX. R. CIV. P. 190.1. Thereafter, the

15

trial court is empowered to alter the discovery control plan. TEX. R. CIV. P. 190.5. The trial court may alter a discovery control plan at any time and is required to do so "when the interest of justice requires." *Id.* Among other things, each discovery control plan includes a discovery period, which describes a timeframe within which the parties must conduct discovery. TEX. R. CIV. P. 190.2–.4.

Initially, we note that the "[t]reaters" that Relators sought to depose were not designated as testifying experts until August 28, 2024, approximately sixty-nine days before the expiration of the discovery deadline set forth in the trial court's docket control order that was in effect at the time. Further, counsel for Sunde was less than cooperative in accommodating Relators' requests for depositions. In this regard, the dilemma that we address here might have been avoided if counsel had dispensed with such gamesmanship and dilatory tactics, a practice which we do not condone. The evidence before the trial court indicated that the Relators were attempting to identify dates on which depositions could be taken as early as September 2024, and that counsel for Sunde was consistently responding that she was generally unavailable for depositions. Counsel for Sunde also insisted that party depositions should be taken before the depositions of Sunde's retained experts, creating additional needless logistical complications. It also appears that counsel for Sunde ignored Relators' invitation to discuss the issue, making it impossible to develop a reasonable plan for completing the requested discovery and proceeding to trial in a timely fashion. By mid-October, it was apparent that there were only five dates on which all of the parties could appear for depositions, even though more than twenty deposition requests were pending at the time.

On the other hand, the record also indicates that counsel for Relators waited until less than thirty days before the discovery cutoff date to signal their intention to

16

take the depositions at issue, further complicating the parties' obligations to work together in scheduling the requested discovery in a timely manner.

While the timing of the attempts to take the depositions of the treaters and funders may be in controversy, the necessity for them appears to be paramount. The depositions of the treaters and funders will potentially fill any gaps in the funding information that Relators seek, particularly in light of the lack of responses to date by Sunde to the written discovery seeking the funding information. Because of their likely utility, the scheduling of the requested depositions of the treaters and funders is a matter that calls for reexamination by the trial court.

*No Adequate Remedy at Law*

Because the discovery at issue may bear some relevance on the issue of the reasonableness of the claimed medical expenses, and because such relevance may not be apparent without further discovery, Relators are without an adequate remedy at law. *See K & L Auto*, 627 S.W.3d at 256 (recognizing that mandamus can issue when discovery is needed so that a reviewing court can "evaluate the effect of the trial court's error based on the record") (citing *Walker*, 827 S.W.2d at 843–44); *see also* TEX. R. CIV. P. 192.3 ("[I]t is not a ground for objection that the information sought will be inadmissible . . . if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

*Conclusion*

The trial court should conduct a new hearing and consider and rule on the objections to written discovery on a request-by-request and objection-by-objection basis. *See Am. Optical*, 988 S.W.2d at 714 (conditionally granting mandamus and instructing the trial court to reconsider motion); *CAR Fin.*, 2020 WL 4213839, at * 6 (same). Additionally, the trial court should reconsider Relators' requests to depose the treaters and funders, particularly in its reconsideration of Sunde's objections to

the written discovery.  As such, the trial court should discourage gamesmanship by any and reopen discovery in this case to address the above.

*This Court's Ruling*

We conditionally grant Relator's petition for writ of mandamus in connection with the written discovery at issue as well as Relators' motion to compel depositions.  We direct the trial court to vacate its December 18, 2024 order that denies Relators' motion to compel.  We further direct the trial court to reopen discovery in this case for the reasons that we have expressed.  A writ of mandamus will issue only if the trial court fails to act by September 5, 2025.


JOHN M. BAILEY
CHIEF JUSTICE


August 21, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

18